THE PEOPLE OF THE STATE OF NEW YORK ex rel. TEDDY FELDMAN, Appellant, *v.* WARDEN OF NEW YORK CITY CORRECTIONAL INSTITUTE FOR WOMEN, Respondent, and Jo OPPENHEIMER.

First Department, December 23, 1974.

*Bonnie Brower* of counsel (*Eric A. Seiff* and *Michael Gage* with her on the brief; *William Gallagher* and *William Hellerstein,* attorneys), for appellant.

*Bernard S. Meyer* of counsel (*Samuel G. Fredman, John P. Seligman* and *Charles M. Newman* with him on the brief; *Fink, Weinberger, Meyer & Charney, P. C.,* attorneys), for Jo Oppenheimer.

CAPOZZOLI, J. We agree with the statement in the dissent that we must be governed in our determination by a consideration of

the best interests of the child involved in this proceeding. Unfortunately, since the child was never produced in court it is difficult to know how to best deal with the situation. The record is clear that this appellant has stubbornly, willfully and contumaciously refused to obey the direction of the court to produce the child. The experienced jurist, before whom this proceeding has been pending from its very start about 14 months ago, held prolonged hearings which lasted about five days and produced almost 500 pages of minutes, leading to the judgment from which this appeal has been taken. We believe it will be of assistance in understanding the lack of merit to this appeal to quote from the record of the hearing. At pages 457–458 the court said:

"With respect to the two other questions, that is, whether she has the power at the present time to obey the mandate of the Court, and the question as to whether the continued incarceration is punitive, there is no doubt that those two questions are related, because if she had no power to obey the mandate of the court, then continued incarceration would be punitive.

"However, if she has the power to obey the mandate of the Court, continued incarceration is coercive and not punitive. So, the factual question, basically is whether or not she has the power to obey the mandate of the Court.

"Upon this point, the Court finds that she still has the power to obey the mandate of the Court but has deliberately kept herself from exercising that power.

"Much of her testimony was evasive. As part of her testimony, she stated that * * * a particular Peter Yee was with her son Micah who was with David Rosoff. She has refused to disclose the name of some people she said she contacted. She has certainly not made the kind of an effort that a mother would normally make if her son's whereabouts were unknown to her."

Even a casual review of the record inexorably leads one to conclude that the conclusions reached by the hearing court are completely justified on the basis of all the evidence adduced. We can see no reason for interfering with the court's determination below.

Frankly, we are at a loss to understand just exactly what our dissenting colleague would expect the Judge of the court below to do under the circumstances which faced him. This appellant simply refuses to obey the court's direction and thereby keeps from the court a child of 12 or 13 years of age, who, according to the record, seems never to have attended school. Nothing is known about his physical condition, the conditions under which he is now living, or who has supervision over him, if anyone.

The dissent states: "It may be that Jo Oppenheimer is not a fit person to have custody." How does that affect the merits of this appeal? The hearing court stressed that it was not deciding custody, it wanted the boy produced so that he could see him and take such steps with regard to his welfare as the situation dictated.

The law is clear that one who has been directed by a court to perform an act which the court finds is within that person's power to perform, he may be imprisoned until the act is performed. Subdivision 1 of section 774 of the Judiciary Law, in part, reads as follows: "Where the misconduct proved consists of an omission to perform an act or duty, which is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it".

In *Stewart* v. *Smith* (186 App. Div. 755, 759), the court said: "In certain circumstances, however, the party proceeded against may by his own act bring about a longer imprisonment than six months. Where the misconduct consists of an omission to perform an act or duty, which it is yet in the power of the offender to perform, he may be imprisoned until he has performed. This is for the vindication of the authority of the court and to compel obedience to its mandate."

In *People ex rel. New York State Labor Relations Bd.* v. *Westchester Movers* (14 Misc 2d 1052, 1053), the court said: "The respondents were clearly held in contempt for a willful failure and omission to perform acts which were then in their power to perform and which acts they had been directed to perform by the order of the Appellate Division of the Second Department. As the subject order indicates, it was the court's intention, pursuant to sections 753 and 774 of the Judiciary Law, not only to impose a fine but also to order that the respondents be imprisoned until they had performed the aforesaid acts. It is clear that in the circumstances here present, both a fine and imprisonment may be imposed."

The reliance by appellant on *Pereira* v. *Pereira* (35 N Y 2d 301) and *People ex rel. Valenti* v. *McCloskey* (6 N Y 2d 390) is misplaced because both those cases are clearly distinguishable from the case at bar.

We are satisfied that the direction to this appellant was clearly expressed and the finding of the court below that she has willfully refused to comply with same, although she has the present ability to do so, is justified by the evidence in this case. The appellant should not be allowed to bargain and barter with the

court on the conditions of her compliance, as is suggested by the dissent.

The judgment should be affirmed, without costs.

KUPFERMAN, J. (dissenting). We have here a rather bizarre situation involving something euphemistically called " family " life in Greenwich Village in this city.

The appellant, seemingly never divorced from her husband, who is alive, has for some 20 years been living with one Rosoff, and from time to time has been joined in the " family " life by various people in some kind of group relationship. One Jo Oppenheimer came to live with this " family ", and, because she had means, financed the purchase of a building in which they all lived. Jo had a child named David, now some 13 years of age, by Rosoff, and David lived in this building from birth until October, 1973. The appellant, who acted as the mother of them all, and who is now 51 and suffering from multiple sclerosis and in a wheelchair, had the relationship of foster mother to David (cf. *Matter of Carla L.,* 45 A D 2d 375), and the natural mother Jo took the role of David's older sister. David did not go to school and, to put it mildly, did not have a normal child's environment or training.

In 1970, Jo Oppenheimer left the " family " and established a new life, although she continued helping to support the " family ". From time to time, she visited David, and finally obtained a writ of habeas corpus seeking David's appearance in court for the purpose of establishing her custodial right to her natural son.

The appellant, contending that Jo might harm the child and was not competent to care for him because of an alleged earlier attempt to assault him and also to kill him, refused to comply and produce David in court, and as a result she was held in civil contempt and incarcerated in the New York City Correctional Institute for Women at Rikers Island on October 8, 1973. On August 7, 1974, she filed a *pro se* writ of habeas corpus, challenging her continued incarceration and was later released in her own recognizance pending a hearing. On November 7, 1974, the appellant's writ was dismissed, and she was remanded to Rikers Island.

Rosoff was also incarcerated on a civil contempt citation, but his case is not now before us.

It is clear that initially appellant was deliberately contumacious in that she instructed her own natural son Micah, some 25 years of age, to take David away. She contends that during

her release from prison between August and November she tried to communicate with Micah and has attempted to locate her "sons", allegedly to no avail. The appellant agreed to give to Special Term information with respect to the names of parties with whom she had been in communication, etc., but only *in camera,* contending that Jo, if she had the information, would through private investigators cause difficulties for the people involved.

Special Term concluded that her testimony was evasive, and that she still had the power to obey the mandate of the court to produce David.

We are dealing with a situation where the appellant has been incarcerated for approximately one year, and where initially there can be no doubt that the incarceration was justified. The question is whether continued deprivation of freedom will or can serve any purpose, as against the basic right of the appellant not to be deprived of liberty without due process of law. (See *Taylor* v. *Hayes,* 418 U. S. 488, 500.) This case is not as clear as that in *Pereira* v. *Pereira* (35 N Y 2d 301) where a similar situation of concealment of a child was involved, nor is it like *People ex rel. Valenti* v. *McCloskey* (6 N Y 2d 390), where the New York State Commission of Investigation sought answers in connection with the so-called Apalachian "meeting" held in up-State New York, and where the charge of perjury and the application of criminal law rather than civil contempt was the proper sanction. Therefore, I would approach the matter differently. One should not be imprisoned for an indeterminate time. (See Judiciary Law, § 774.) There have been already three mandatory reviews of commitment. (*Ibid.,* § 774, subd. 2.) The court in its discretion may make an order upon such terms as justice requires with respect thereto. (*Ibid.,* § 775.)

This matter should be remanded to Special Term to formulate conditions for release of the appellant. Among other things, she can be directed to use her best efforts to communicate with her natural son Micah and with others in her "family" to attempt to produce David or to disclose his whereabouts. Advertisements can be placed in the newspapers in her name. Whatever information she may have with respect to the matter should be fully revealed in the record, so that others may be in a position to attempt to discover the whereabouts of the child.

Further, it is the best interests of the child that are involved in this proceeding. It may be that Jo Oppenheimer is not a fit person to have custody. If so, the urgency of her action loses

its force, and there may be less reason for the commitment of the appellant. A hearing should be held with respect thereto.

Incarceration should not be the panacea for this situation.

McGivern, P. J., Markewich and Lane, JJ., concur with Capozzoli, J.; Kupferman, J., dissents in an opinion.

Judgment, Supreme Court, New York County entered on November 7, 1974, affirmed, without costs and without disbursements.