GERARDO CATENA, PLAINTIFF-RESPONDENT, v. RICHARD A. SEIDL, SUPERINTENDENT OF YOUTH RECEPTION AND CORRECTION CENTER, YARDVILLE, NEW JERSEY, DEFENDANT-APPELLANT.

Argued March 17, 1975—Decided August 19, 1975.

*Mr. Anthony G. Dickson* argued the cause for defendant-appellant.

*Mr. Robert L. Weinberg,* of the District of Columbia bar, argued the cause for plaintiff-respondent (*Mr. S. M. Chris*

*Franzblau,* of counsel and on the brief. *Messrs. Franzblau, Cohen & Falkin,* attorneys).

PER CURIAM. Gerardo Catena, having been found to be in contempt of the State Commission of Investigation (hereinafter S. C. I.), has been confined continuously since March 4, 1970 except for short periods of temporary release for medical treatment and other personal reasons. His confinement has been based on his refusal to answer questions put to him by the S. C. I. concerning organized crime activities, even though he had been granted testimonial immunity pursuant to *N. J. S. A.* 52:9M-17. Following his refusal to testify, Catena was cited for contempt by the Superior Court which ordered that he be committed until such time as he purged himself of contempt by testifying. The legality of his confinement was ultimately upheld by the United States Supreme Court in *Elias v. Catena,* 406 *U. S.* 952, 92 *S. Ct.* 2056, 32 *L. Ed.* 2d 341 (1972).

In the meantime, Catena has remained steadfast in his refusal to testify. The present proceedings seeking to effect Catena's release were begun in December 1973. *Inter alia* it was alleged that despite the fact that Catena had not purged himself of contempt, his confinement should be terminated because it had failed as a coercive measure. The trial court, after a summary hearing and without receiving any testimony or other evidence except for a letter report as to the state of Catena's health, ordered that Catena be released on the grounds that the order holding him in contempt no longer had any coercive impact and had become punitive in nature.

We reversed the aforesaid ruling of the trial court in *Catena v. Seidl,* 65 *N. J.* 257 (1974) holding (1) that the test to be applied was whether or not there was a substantial likelihood that continued commitment of Catena would accomplish the purpose of the order upon which the commitment was based, (2) that the S. C. I. was not required to

demonstrate the continued efficacy of such order but that Catena had the burden of showing that the commitment, lawful when ordered, had lost its coercive impact and had become punitive and (3) that on the record then presented Catena had not sustained that burden. However, we remanded the matter to the trial court to allow Catena the opportunity to present evidence in support of additional contentions that questions he declined to answer may have been derived from unlawful electronic surveillance, and that the subpoena to testify issued by the S. C. I. stemmed from illegally obtained information. See *Catena, supra,* 65 *N. J.* at p. 265.

When the matter came before the trial court the hearing was expanded to include not only the issue covered by the remand, but also reconsideration of the question whether continued confinement of Catena would serve any coercive purpose. As to this latter question, affidavits were submitted by Catena and three of his attorneys; Catena's wife and one of his daughters also testified. Based on this supplemental proof, as well as Catena's silence since March 1970, his age and condition of health, the trial court again found that Catena's continued confinement had gone beyond the coercive stage and had become punitive and that he should be released.

This Court, in an opinion reported at 66 *N. J.* 32 (1974), found itself unable to review the correctness of the trial court's ruling because of the inadequacy of the record. We held that use of *ex parte* proofs in the form of affidavits and a letter report as to the state of Catena's health was improper since it prevented the S. C. I. from testing the veracity and credibility of content. We reiterated that it was Catena who had the burden of proof and that such burden was not sustainable by *ex parte* affidavits and reports. 66 *N. J., supra,* at p. 37. Accordingly, we remanded the matter to the trial court to afford Catena the opportunity to present live testimony.

Pursuant to the remand, Catena testified, as well as his physician and three of his attorneys. Following the hearing the trial court in an oral decision reviewed all of the evidence and once more found that there was no substantial likelihood that continued confinement of Catena would ever cause him to break his silence and answer the questions put to him by the S. C. I.

The trial court noted Catena's age (73 years old), state of health and confinement since March 1970. It reviewed the reason given by Catena for remaining silent (essentially Catena testified that he believed he had a right of privacy which could not be taken away from him), and while it did not believe him in that regard, concluded that no matter what Catena's real reason was, he had demonstrated such total obstinacy that the trial court was satisfied that he would never answer any questions.

Actually, whether Catena's refusal to testify is based on moral conviction or principle, or whether, as the S. C. I. contends, he is adhering to organized crime's oath of silence is not controlling.[1] Whatever his reason, good or bad, the question is whether there is a substantial likelihood that continued confinement will cause Catena to change his mind and testify.

The great strength of the rule of law in a democratic society is that it applies equally to all persons, the bad as well as the good. True, Catena has refused to cooperate with the S. C. I. in its investigation into organized crime and the statute permits the imposition of sanctions on him as a coercive measure to force him to testify to whatever knowl-

---

[1] In *In re Farr*, 36 *Cal. App.* 3d 577, 111 *Cal. Rptr.* 649 (Ct. App. 1974) where commitment for disobedience of a court order to testify was involved, it was suggested that it became necessary to determine the point at which the commitment ceased to serve its coercive purpose and became punitive in character only in a situation where the continuous silence was based on "an established articulated moral principle." We reject this limitation as incapable of practical application.

edge and information he has as to the subject matter of the S. C. I.'s investigation. However, his confinement has been for that purpose and that purpose alone. See *In re Zicarelli, Occhipinti, Russo*, 55 *N. J.* 249, 271–272 (1970). It cannot be used to punish him for remaining silent or for any other shortcoming of which he has not been convicted. As we noted in one of our previous opinions in this matter, "[o]nce it appears that the commitment has lost its coercive power, the legal justification for it ends and further confinement cannot be tolerated." 65 *N. J.* at p. 262.

We have made our own evaluation of the evidence. *R.* 2:10–4. Catena is now 73 years of age and in the twilight of his life. He has been confined for more than five years in an effort to get him to testify. His condition of health has been deteriorating and his physician has advised him that it is dangerous to his heart condition to remain confined. Despite all this, he has refused to break his silence and has continued to insist that "they'd have to carry me out of there feet first." The trial judge who had the opportunity to see and hear Catena was satisfied that he would never answer any questions for the Commission.

Based on the foregoing, it now appears that there is no substantial likelihood that further confinement will accomplish the purpose of the order upon which Catena's commitment was based. However, we want to make it perfectly clear that in similar circumstances a person's insistence that he will never talk, or confinement for a particular length of time does not automatically satisfy the requirement of showing "no substantial likelihood." Each case must be decided on an independent evaluation of all of the particular facts. Age, state of health and length of confinement are all factors to be weighed, but the critical question is whether or not further confinement will serve any coercive purpose.

We are not condoning Catena's defiance of the S. C. I. investigation, nor are we subscribing to his reasons for remaining silent, whatever they may be. We hold only that it

now appears that there is no substantial likelihood that further confinement will serve any coercive purpose and cause him to testify. Since no legal basis for the continued confinement of Catena exists, such confinement must be terminated. The matter is remanded to the trial court for entry of an order that Catena be released from custody forthwith.

SCHREIBER, J. (dissenting). The majority has held and found that Catena should be released because from Catena's subjective viewpoint his commitment has lost its coercive impact and become punitive. I must dissent on two grounds: (1) the test applied is unsound; and (2) even if that standard is used, the evidence does not justify the result.

I.

To view the refusal to testify from Catena's viewpoint is to ignore the clear legislative mandate. But more than that, it results in the substitution of Catena's code for that mandate, a code which the majority points out may well be "organized crime's oath of silence." The effect of the Court's holding today is to substitute Catena's dogma for the law duly adopted by society.

The State Commission of Investigation was created to conduct investigations in connection, among other things, with the "faithful execution and effective enforcement of the laws of the State, with particular reference but not limited to organized crime and racketeering". *N. J. S. A.* 52:9M-2. In this respect its functions are to be carried on in cooperation with law enforcement officials (*N. J. S. A.* 52:9M-5 and 6) as well as making recommendations to the Governor for submission to the Legislature for legislative action "for the more effective enforcement of the law." *N. J. S. A.* 52: 9M-3.

The teeth in its investigative authority are found in *N. J. S. A.* 52:9M-17. Under that section the Commission may confer immunity upon the witness so that neither the

responsive evidence nor the fruits thereof may be used against him in a criminal prosecution. Once granted, it is incumbent on the witness to respond. If he refuses to do so, the witness may be "prosecuted" for contempt for failing to give an answer in accordance with the order of the Commission.

The prime purpose of the act is to satisfy the public need for the information irrespective of the stubbornness of the witness. The Legislature, fully aware of that need, authorized the Commission to clothe the witness with immunity so that the data could be obtained. Refusal to comply with the order justifies a finding of contempt. The statute contemplates that the witness should be incarcerated indefinitely under those circumstances. Chief Justice Weintraub in *In re Zicarelli, Occhipinti, Russo,* 55 *N. J.* 249, 272 (1970), *aff'd* 406 *U. S.* 472, 92 *S. Ct.* 1670, 32 *L. Ed.* 2d 234 (1972), wrote:

> . . . Here we have no doubt that the Legislature intended the S.C.I. to obtain the facts, whatever the wish of the person subpoenaed. The very provision for a grant of immunity repels the notion that a witness may choose to be silent for a price.

The State's primary motive is to obtain information. "[T]he mission of the S. C. I. is to obtain facts for the Legislature and the mere punishment of a recalcitrant witness would not achieve that end." *In re Zicarelli, Occhipinti, Russo, supra,* 55 *N. J.* at 272. In the absence of a showing that the public need for that information no longer exists, the contempt remains unabated. "To uphold a coercive commitment in an investigatory proceeding, there must be a present and continuing interest in the information requested." *Note,* "The Application of the Law of Contempt to the Uphaus Case," 61 *Colum. L. Rev.* 725, 735 (1961). No one has asserted or offered any evidence that the Commission's position has ever been any other than to obtain the information which Catena probably has; and that that information is still presumably useful to the Commission.

Catena has conceded for the purpose of this appeal that he is able to testify and possesses information pertinent to the Commission's continuing investigation of organized crime.[1]

The fact that the imprisonment may be for an indefinite period is legally justifiable. *Uphaus v. Wyman,* 360 *U. S.* 72, 81, 79 S. Ct. 1040, 1046, 3 *L. Ed.* 2d 1090, 1099 (1959); *Penfield Co. of California v. Securities & Exchange Commission,* 330 *U. S.* 585, 67 S. Ct. 918, 91 *L. Ed.* 1117 (1947); *Maggio v. Zeitz,* 333 *U. S.* 56, 68 S. Ct. 401, 92 *L. Ed.* 476 (1948); *In re Manna,* 124 *N. J. Super.* 428 (App. Div.), certif. den. 64 *N. J.* 158 (1973). In *Uphaus v. Wyman, supra,* Uphaus refused to produce certain documents before a New Hampshire legislative investigating committee whose purpose was to ascertain whether subversive persons or organizations were present in the state. After refusal to comply with two subpoenas duces tecum in court, he was adjudged in contempt and committed to jail until he complied with the court order. The sentence was upheld. The Court relied on the following language in *Green v. United States,* 356 *U. S.* 165, 197, 78 S. Ct. 632, 650, 2 *L. Ed.* 2d 672, 696 (1958) (dissenting opinion):

Before going any further, perhaps it should be emphasized that we are not at all concerned with the power of courts to impose conditional imprisonment for the purpose of compelling a person to obey a valid order. Such coercion, where the defendant carries the keys to freedom in his willingness to comply with the court's directive, is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.

One court recently has held that, where the individual had been in jail for one year for failure to comply with a

---

[1] *Catena v. Seidl,* 66 *N. J.* 32, 38 (1974). Inability to comply with the order would justify release. *Maggio v. Zeitz,* 333 *U. S.* 56, 68 S. Ct. 401, 92 *L. Ed.* 476 (1948). This is not the situation where "[a] man, faced with perpetual imprisonment till he discloses his confederates, will in the end find confederates to disclose." *Loubriel v. United States,* 9 *F.* 2d 807, 809 (2 *Cir.* 1926).

court order to disclose the location of a child, so long as the witness had the power to obey, the incarceration was proper. *People ex rel. Feldman v. Warden, etc.,* 46 *A. D.* 2d 256, 362 *N. Y. S.* 2d 171 (App. Div. 1974). The court stated:

> The law is clear that one who has been directed by a court to perform an act which the court finds is within that person's power to perform, he may be imprisoned until the act is performed.
>
> *   *   *   *   *   *   *   *
>
> . . . The appellant should not be allowed to bargain and barter with the court on the conditions of her compliance . . . . 362 *N. Y. S.* 2d at 173–174.

In the absence of demonstrating that the public need for the information no longer exists, Catena should not be permitted to substitute his code for the law of society. He should not be permitted to remain "silent for a price."

## II.

Even applying the subjective standard, namely, when did Catena's incarceration lose its coercive effect, the record here is insufficient to justify his release.

Incarceration has a dual aspect insofar as the prisoner is concerned. It is both coercive and punitive. There can be no doubt that from the outset he must consider his being jailed as punishment. "[I]ncarcerating a man until he does a certain act is as much a punishment of his original refusal to do that same act as it is a coercion of his doing it in the future." *Goldfarb, The Contempt Power* 60 (1963). The longer he is there, the more extensive the punishment. On the other hand, as time passes the coercive force of the desire to open the door to freedom in all likelihood becomes greater too. Age and health do not necessarily detract from and may in fact increase the coercive effect of imprisonment.[2]

---

[2] The plaintiff places great stress on the argument that the trial judge's findings should not be disturbed unless clearly mistaken.

At what point the imprisoned person becomes completely adjusted to that life depends on the individual. Certain types of personalities can withstand strain over a longer period of time than others. *Menninger, Psychiatry In A Troubled World* 145 (1948). In considering the effects of imprisonment it has been said that: "The different ways in which punishment is accepted, and the different time taken in the development of the mental processes cause great inequalities." *Ohm, Personality Changes During Deprivation of Liberty* (1964), summarized in *Excerpta Criminologica* 219 (1965).

Where, as here, the legislative intent has been expressed to compel the witness to divulge the information in return for immunity, and where the factual issue to be resolved will vary from individual to individual depending upon his personality, psychiatric reactions and adjustment, it is incumbent on him to prove clearly and convincingly that continued incarceration will have no coercive effect. Catena has not met that burden. His continuous legal attacks since incarceration, on many different grounds, until November 1974, reflect a hope which diluted the coercive effect of the order. *Catena v. Seidl, 65 N. J. 257, 263* (1974). Conspicuous by its absence was any expert psychiatric evidence. As noted earlier, age and health may well be factors which have primarily a coercive drive — rather than resignation. This Court in *Catena v. Seidl, supra, 65 N. J.* at 264, in June 1974 wrote:

> The argument is made that Catena's age, condition of health and his persistent silence for four years, without more, establish a *prima facie* case that his commitment has failed as a coercive measure. We cannot agree. As heretofore noted, Catena's past silence can be rationally attributed to considerations other than an adamant refusal to purge himself of contempt despite the consequences.

*State v. Johnson, 42 N. J. 146* (1964). Appellate review of a conviction for contempt is had on the law and facts. *R. 2:10-4. In re Ruth M. Buehrer, et al., 50 N. J. 501, 516* (1967) ; *In re Education Association of Passaic, Inc., 117 N. J. Super. 255, 259* (App. Div. 1971), certif. den. 60 *N. J.* 198 (1972).

There has been nothing more satisfactorily shown in this record to alter the conclusion we made then. Having failed to establish clearly and convincingly that continued imprisonment has lost its coercive import, Catena should not be freed.

I would reverse.

Justice MOUNTAIN joins in this dissent.

*For remand*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—5.

*Opposed*—Justices MOUNTAIN and SCHREIBER—2.