Howard A. LAMBERT,
Petitioner-Appellant,

v.

STATE OF MONTANA,
Respondent-Appellee.

No. 76–1037.

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1976.

Dennis P. Conner (argued), Great Falls, Mont., for petitioner-appellant.

Charles Erdmann, Atty. (argued), Helena, Mont., for respondent-appellee.

Before LAY,* WRIGHT and KILKEN-NY, Circuit Judges.

LAY, Circuit Judge:

This case presents the novel question as to whether due process considerations may affect the duration of confinement resulting from a state court's commitment arising from a finding of civil contempt. The petitioner, Howard A. Lambert, seeks a writ of habeas corpus alleging as unconstitutional his continuing confinement in a county jail as a result of a civil contempt order entered by a Montana state judge. The federal district court found that the petition presented no constitutional questions and denied the writ. We affirm the denial of the writ of habeas, however, we remand the cause for further proceedings in the district court.

The facts leading to the petitioner's commitment may be briefly stated. On May 20, 1975, the State of Montana charged Lambert with aggravated assault. This charge arose from an incident on May 1, 1975, involving the alleged discharge of a weapon in the direction of two persons. After investigating, the state concluded that petitioner did not discharge the weapon but that he knew who did. On June 17, 1975, the state filed a motion to produce testimony under Mont.Rev.Codes Ann. § 95–1807 (1947).[1] On June 27, 1975, the state court dismissed the aggravated assault charge against petitioner and granted him immunity from prosecution. The court ordered him to testify concerning the identity of the person who discharged the weapon. Lambert admitted he knew the person's identity but refused to disclose his information. Upon his continued refusal, the state trial judge found Lambert in contempt of court and ordered him committed until he identified the person who discharged the weapon. The confinement has continued to this date.

The Supreme Court of the State of Montana denied petitioner relief on the grounds that the trial court had properly interpreted Mont.Rev.Codes Ann. § 95–1807 and the contempt order was within the judicial power of the court rendered as part of a judicial proceeding. 538 P.2d 1351 (Mont. 1975). A rehearing was denied on September 2, 1975.

On October 9, 1975, petitioner sought a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2241. He alleged: (1) that he had been denied due process of law by being imprisoned beyond the term of the court without a hearing; and (2) that the action of the district judge amounted to an invasion of the province of the grand jury and violated the Fifth and Fourteenth Amendments of the Constitution of the United States. The federal district court denied the writ, holding that the petition presented no substantial federal constitutional questions and that the federal court would not review an order of a state court on matters of Montana law. On the present record, we affirm the denial of the writ of habeas corpus, however, as we now discuss, we remand the cause for further proceedings under the jurisdiction of the federal district court.

■ A court has the inherent power to punish for civil or criminal contempt any obstruction of justice relating to any judicial proceeding. *Cf. United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). Whether Lambert's interrogation was in conjunction with a "judicial proceeding" under the Montana statute is

---

* The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Mont.Rev.Codes Ann. § 95–1807 (1947) provides:

Before or during trial in any judicial proceeding, a justice of the supreme court or judge on the district court, upon request by the attorney prosecuting or counsel for the defense, may require a person to answer any question or produce any evidence that may incriminate him. If a person is required to give testimony or produce evidence, in accordance with this section, in any investigation or proceeding he cannot be prosecuted or subjected to any penalty or forfeiture, other than a prosecution or action for perjury or contempt, for or on account of any transaction, matter or thing concerning which he testified or produced evidence.

clearly a question of state law and does not transcend any federal constitutional ground. The Supreme Court of the State of Montana found that the questioning of Lambert was proper and was directly related to a judicial proceeding. Any argument that this proceeding encroaches upon the Constitution is strained. We have no jurisdiction to review that finding.

Relying on *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), petitioner challenges his continued confinement past the term of the state court which found him in contempt. The *Shillitani* case concerned civil contempt in a grand jury investigation. The Supreme Court held that after the grand jury adjourned, a contemnor lost the power to purge himself and could no longer be civilly committed. The Supreme Court stated:

> Once the grand jury ceases to function, the rationale for civil contempt vanishes, and the contemnor has to be released.

384 U.S. at 372, 86 S.Ct. at 1536.

We agree with the federal district court that the term of the state court is not similarly related to the continuing ability of Lambert to purge himself at anytime before a state judge. In this sense *Shillitani* is distinguishable.

Nonetheless we think Lambert's allegation that his continuing commitment for civil contempt violates due process raises a serious federal constitutional challenge which requires further proceedings in the district court. Where it is alleged that the duration of an individual's confinement no longer bears a reasonable relationship to the purpose for which he is committed a substantial federal constitutional claim relating to denial of due process is present.

*Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *McNeil v. Director, Patuxent Institution,* 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972).

In *Jackson v. Indiana, supra,* two doctors reported that the defendant, charged in state court with robbery, would not be able to understand the nature of the charges against him nor to participate in his own defense. One doctor testified that petitioner's prognosis was dim. The state court ordered Jackson committed to the Indiana Department of Mental Health until "such time as that Department should certify to the court that 'the defendant is sane.'" Petitioner's counsel argued that commitment under these circumstances amounted to a life sentence without Jackson's ever having been convicted of a crime. The Supreme Court concluded that "Indiana [could not] constitutionally commit the petitioner for an indefinite period simply on account of his incompetency to stand trial on the charges filed against him." 406 U.S. at 720, 92 S.Ct. at 1849. Relevant here, the Court observed, *"due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Id.* at 738, 92 S.Ct. at 1858 (emphasis added).[2]

In the *McNeil* case the petitioner was given a five-year criminal sentence and subsequently referred, under an *ex parte* order, for psychological examination. Petitioner, who refused to cooperate with the examiners, was held beyond his five-year sentence and was to be confined indefinitely until he cooperated. Petitioner claimed that when his five-year sentence expired the *state lost its power to hold him,* and that his continued detention violated his Fourteenth

2. In so holding Mr. Justice Blackmun wrote:

We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

*Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972) (footnote omitted).

Amendment rights. The Supreme Court agreed. Relying on the above language from *Jackson,* the Court found:

> In this case it is sufficient to note that the petitioner has been confined for six years, and there is no basis for anticipating that he will ever be easier to examine than he is today. In these circumstances, it is a denial of due process to continue to hold him on the basis of an *ex parte* order committing him for observation.

407 U.S. at 250, 92 S.Ct. at 2087.[3]

We find petitioner here has raised a similar federal question. At the time this case was argued, September 9, 1976, the petitioner had been confined for sixteen months. In view of the length of time that petitioner has remained silent even though in a custodial situation, there exists a substantial likelihood that continued confinement is no longer serving its purpose. If this is true, it may be that the nature and duration of the commitment no longer bear a reasonable relationship to the purpose for which Lambert was committed and that, in fact, the commitment has lost its coercive force, and is now punishment falling under the pale of criminal contempt.

In *Catena v. Seidl,* 65 N.J. 257, 321 A.2d 225 (1974), a witness who had been confined for contempt after refusing to answer questions put to him by the State Commission of Investigation despite grant of testimonial immunity, sought relief from confinement. The Supreme Court of New Jersey, in that situation strikingly similar to the present one, held that although the legal justification for commitment of a person for civil contempt is to secure compliance, once it appears that the commitment has lost its coercive power, the legal justification for it ends and further confinement cannot be tolerated. The New Jersey court observed that commitment loses its coercive power when there is "no substantial likelihood" that continued commitment would accom-

plish the purpose of the order on which the commitment was based. The court remanded the case to allow the plaintiff opportunity to present evidence on whether the commitment, lawful when ordered, had lost its coercive impact and had become punitive.

In a subsequent appeal, *Catena v. Seidl,* 68 N.J. 224, 343 A.2d 744, the court observed that Catena's confinement could not be used to punish him for remaining silent. Under the facts in the case the court found that Catena had met his heavy burden proving there was "no substantial likelihood" that further confinement would accomplish the purpose of the order upon which his confinement was based and remanded the case to the trial court for entry of an order that Catena be released from custody. The court carefully made the following caveat:

> [W]e want to make it perfectly clear that in similar circumstances a person's insistence that he will never talk, or confinement for a particular length of time does not automatically satisfy the requirement of showing "no substantial likelihood." Each case must be decided on an independent evaluation of all of the particular facts. Age, state of health and length of confinement are all factors to be weighed, but the critical question is whether or not further confinement will serve any coercive purpose.
>
> We are not condoning Catena's defiance of the S.C.I. investigation, nor are we subscribing to his reasons for remaining silent, whatever they may be. We hold only that it now appears that there is no substantial likelihood that further confinement will serve any coercive purpose and cause him to testify.

343 A.2d at 747.

The California courts have also adopted a "no substantial likelihood" test to determine the distinction between commitment for a proper civil purpose and incarceration

---

**3.** Although the Court made no findings on the matter it suggested that "if the petitioner's confinement were explicitly premised on a finding of contempt, then it would be appropriate to consider what limitations the Due Process Clause places on the contempt power." *McNeil v. Director, Patuxent Institution,* 407 U.S. 245, 251, 92 S.Ct. 2083, 2088, 32 L.Ed.2d 719 (1972).

to punish. *See In re Farr,* 36 Cal.App.3d 577, 111 Cal.Rptr. 649 (1974). The Court of Appeal for the Second District said:

A coercive incarceration to compel compliance with an order of court presents a special problem where disobedience of the order is based upon an established articulated moral principle. In such a situation, it is necessary to determine the point at which the commitment ceases to serve its coercive purpose and become punitive in character. When that point is reached so that the incarceration of the contemnor becomes penal, its duration is limited by the five day maximum sentence provided in Code of Civil Procedure section 1218.

111 Cal.Rptr. at 653 (citation omitted).

Distinctions which exist between civil and criminal contempt make the possibility of oppression in the present case even more evident. We note that although the state's criminal code does not affect the power of a court to punish for civil contempt, Mont. Rev.Codes Ann. § 94–1–104 (Supp.1975), the Montana criminal contempt power extends to "unlawfully refusing to be sworn as a witness in any court proceeding or, after being sworn, refusing to answer any legal and proper interrogatory." Mont.Rev. Codes Ann. § 94–7–309(1)(d) (Supp.1975). Section 94–7–309(2) (Supp.1975) provides, "a person convicted of the offense of criminal contempt shall be fined not to exceed five hundred dollars ($500) or be imprisoned in the county jail for a term not to exceed six (6) months, or both." If Lambert had been charged with criminal contempt under Mont.Rev.Codes Ann. § 94–7–309(1)(d) (Supp.1975), as he could have been, his punishment has already exceeded that allowed.

The Supreme Court in *Shillitani, supra,* reasoned:

Having sought to deal only with civil contempt, the District Courts lacked authority to imprison petitioners for a period longer than the term of the grand jury. This limitation accords with the doctrine that a court must exercise "[t]he least possible power adequate to the end proposed." *Anderson v. Dunn,* 6 *Wheat.* 204, 231, 5 L.Ed. 242 (1821); *In re Michael,* 326 U.S. 224, 227, 66 S.Ct. 78, 90 L.Ed. 30 (1945).

384 U.S. at 371, 86 S.Ct. at 1536 (1966) (footnotes omitted).[4]

Although we agree that originally civil contempt was the proper measure undertaken by the state court in the instant case, the duration of this commitment, in view of the possible maximum penalty under the Montana criminal contempt statute raises constitutional concern.[5]

We conclude there may exist substantial likelihood that petitioner's confinement is no longer coercive, but may now be punitive. If this is true his continued confinement denies him due process and he should be released, since, to be constitutional, his confinement must bear some reasonable relationship to the purpose for which he was committed. We remand the cause for a hearing on the issue of whether the commitment has lost its coercive power and whether there is substantial likelihood that continued confinement will accomplish the purpose of the order on which the commitment was based. We note that petitioner bears the burden of proving that continued confinement will not cause him to change his mind and testify.

**4.** Professor Dobbs suggests that "civil contempt and criminal contempt often overlap and civil contempt is generally used where it is a less restrictive measure than the punitive measure set forth for criminal contempt." D. Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev. 183 (1970).

**5.** In *McNeil, supra,* the Maryland statute limited the psychological examination period to six months. The Supreme Court said that although Maryland courts had apparently construed the statute to permit extensions of time, "nevertheless the initial legislative judgment provides a useful benchmark" for the permissible length of commitment. 407 U.S. at 250, 92 S.Ct. at 2087. Here the Montana legislature has determined that criminal actions of the type for which the petitioner is being held, are punishable by a maximum six months confinement.

The district court may grant petitioner an immediate hearing or alternatively allow the state 30 days in which to conduct such a hearing. If the State of Montana grants such a hearing, the federal district court should no longer entertain jurisdiction of the proceeding. If, on the other hand, the state does not act within 30 days of its order, the district court should hold the hearing and further process the case in accord with this opinion.

The judgment denying writ of habeas corpus is affirmed; the cause is remanded to the district court for further proceedings in accord herewith.

KILKENNY, Concurring and Dissenting:

I would affirm the judgment of the lower court and require the appellant to seek a writ of certiorari from the United States Supreme Court. I question at this point whether we should discuss the necessity for the hearing mentioned in the majority opinion before appellant has exhausted his remedies. Otherwise, I am in agreement with the majority's conclusions.