(No. 77016.—

# NORELL SANDERS, Appellee, v. O.D. SHEPHARD, Appellant.

*Opinion filed November 23, 1994.—Rehearing denied January 30, 1995.*

McMORROW, J., took no part.

Steven E. Glink, of Chicago, for appellant.

Joan S. Colen and James O. Latturner, of Chicago, for appellee.

William R. Quinlan, Roseann Oliver and Kevin C. Clegg, of Pope, Cahill & Devine, Ltd., of Chicago, *amici curiae.*

JUSTICE MILLER delivered the opinion of the court:

In proceedings in the circuit court of Cook County, the respondent, O.D. Shephard, was found in contempt of court for his failure to comply with an order directing him to produce his daughter, whom he had previously taken from the child's mother, Norell Sanders. The court ordered the respondent to remain in custody pending his compliance with the order. The appellate court affirmed the contempt judgment. (258 Ill. App. 3d 626.) We allowed the respondent's petition for leave to appeal (145 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The background of this case may be stated briefly. The respondent was arrested in July 1985 and charged with aggravated kidnapping and child abduction for the removal of his two-year-old daughter, Deborah Sanders, from the home of the child's mother, Norell Sanders. The respondent was subsequently convicted of child abduction and sentenced to serve three years' imprisonment for that offense. (See *People v. Shephard* (1988), 171 Ill. App. 3d 977 (affirming conviction and sentence).) Shortly before the respondent's scheduled release from prison, in October 1987, the petitioner, Norell Sanders, obtained an *ex parte* order of protection pursuant to the Illinois Domestic Violence Act of 1986 (Ill. Rev. Stat. 1987, ch. 40, pars. 2311—1 through 2313—5). One of the requirements of the order was that the respondent produce the missing child. (See Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(b)(7).) The respondent was released from

the penitentiary on October 6, 1987. He appeared in court on October 9, 1987, pursuant to the order of protection, but he did not have the child with him. At that time, the circuit judge conducted a brief hearing and found the respondent in contempt of court for his failure to comply with the order.

An evidentiary hearing was conducted on November 19, 1987. At the hearing, the child's mother, Norell Sanders, testified that the respondent forcibly removed Deborah from her custody on September 27, 1984. Sanders stated that she had not seen the child since that time. Sanders also described a number of telephone calls that the respondent made to her in the weeks following the abduction. On one occasion, in late September or early October 1984, the respondent permitted Sanders to speak to her daughter. In another call, the respondent threatened that Sanders would next see the child in a "pine box." Later in October 1984, the respondent called Sanders and said that he had abandoned the child, possibly in Arkansas or Tennessee. In November, the respondent called Sanders and demanded $2,000 for the safe return of the child. It is not clear from the record what efforts, if any, Sanders made to comply with that demand. Sanders testified that she has not seen the child since September 1984. Sanders denied that the respondent returned the child to her in December 1984, as he claimed to have done. At the hearing, a cousin and a teen-aged daughter of Sanders both testified that they saw no signs of Deborah's presence in the apartment following her abduction in 1984.

A Chicago police officer and an Illinois State Police agent also testified at the November 1987 hearing. Their investigations disclosed that the child was last seen in October 1984, riding in a car with the respondent at a family funeral in Memphis. The two law enforcement

officers described the various steps that had been taken in the unsuccessful attempt to locate the missing child. They also stated that Sanders had been cooperative throughout their efforts.

The respondent also testified at the November 1987 hearing. The respondent acknowledged taking the child from Sanders in September 1984. He said, however, that he last saw Deborah in December 1984, when he returned her to Norell Sanders. The respondent said that he did not have any other information regarding Deborah's location.

At the conclusion of the hearing, the circuit judge found the respondent in contempt of court and sentenced him to six months in jail, to be released if he complied with the order and revealed the location of the missing child. The judge stated that he believed that the respondent knew where the child could be found, and noted that the respondent was the last person seen with her. The circuit judge renewed the order six months later, in May 1988, following a brief hearing at which Sanders again presented testimony regarding the efforts to locate the missing child. The judge entered successive orders at six-month intervals. The appellate court affirmed several of these orders in an earlier appeal. *Sanders v. Shephard* (1989), 185 Ill. App. 3d 719.

On December 21, 1990, the respondent filed a motion seeking to vacate the contempt. It is the ruling on this motion that is the subject of the present appeal. The respondent alleged that the contempt sanction no longer had a coercive effect and that his continued incarceration was therefore a violation of due process. The parties submitted briefs on the issues raised in the motion, but the respondent did not present any testimony or other evidence in support of his request. The circuit judge heard arguments on the motion on April 16, 1991, and denied it on May 2, 1991. The judge

believed that the contempt sanction remained coercive, and was not violative of due process.

The respondent then instituted the present appeal from the order denying his motion to vacate. After a lengthy delay attributable to the defendant, the case was submitted to the appellate court, which affirmed the circuit court judgment. (258 Ill. App. 3d 626.) The appellate court agreed with the circuit judge that the contempt sanction remained coercive and that the respondent's continued incarceration was therefore valid. We allowed the respondent's petition for leave to appeal. (145 Ill. 2d R. 315(a).) We later granted leave to an *amicus curiae* to file an additional brief in the respondent's behalf. 134 Ill. 2d R. 345(a).

As a preliminary matter, the appellee, Norell Sanders, contends that the respondent's appeal is moot because the respondent is currently being held in custody by virtue of an order different from the one that is the subject of this case. Sanders notes that the respondent, since the time of the proceedings below, has obtained a new hearing from a different judge on the propriety of his continued incarceration, and that the second judge has entered at least two orders upholding the respondent's confinement. Sanders thus believes that the present appeal is moot because the respondent is currently being detained pursuant to an order that is not at issue here. We note that the record before us contains no information regarding any subsequent proceedings brought by the respondent and is limited to matters considered by the circuit judge, Judge Brodkin, beginning in 1987 and continuing through May 2, 1991, the date of the order being appealed from.

We do not believe that the present appeal is moot. A conclusion that the May 1991 order was erroneous would, we believe, make necessary the respondent's release from custody. If in fact the sanction of incarcer-

ation had ceased to be coercive at the earlier time that is the subject of this appeal, we do not believe that the respondent's continued confinement could be justified even if a second judge, on the same evidence, subsequently held a different belief. The respondent remains in custody today, and the May 1991 order represents a link in the chain of orders resulting in the respondent's continued confinement. We thus decline Sanders's invitation to dismiss the present appeal as moot. By the same token, however, our review here is limited to the propriety of the May 1991 order, and we turn now to the merits of the case.

Vital to the administration of justice is the inherent power of courts to compel compliance with their orders. (*Shillitani v. United States* (1966), 384 U.S. 364, 370, 16 L. Ed. 2d 622, 627, 86 S. Ct. 1531, 1535.) There is no dispute that the contempt order in the present case is properly classified as civil rather than criminal. The circuit judge imposed a conditional, renewable sanction, providing for confinement of the respondent in an effort to compel him to produce the missing child or provide information regarding her whereabouts. The contemnor thus holds in his own pocket the key to his jail cell, and he may win his release at any time by complying with the order of the court. (*Shillitani*, 384 U.S. at 368, 16 L. Ed. 2d at 626, 86 S. Ct. at 1534.) Accordingly, the sanction imposed in the present case is designed to be coercive rather than punitive, and the contempt is properly classified as civil. *Hicks v. Feiock* (1988), 485 U.S. 624, 632-33, 99 L. Ed. 2d 721, 732, 108 S. Ct. 1423, 1429-30.

Commitment for civil contempt, lawful when ordered, may lose its coercive effect, however. (*Soobzokov v. CBS, Inc.* (2d Cir. 1981), 642 F.2d 28, 31 ("When it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and

take on more of the nature of punishment").) The parties agree that a sanction for civil contempt must be vacated once it becomes clear that the sanction has become merely punitive. "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." (*Jackson v. Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.) As a requirement of due process, then, a civil contempt order will be vacated once it is evident that the sanction imposed is no longer fulfilling its original, coercive function. *In re Dickinson* (2d Cir. 1985), 763 F.2d 84, 87; *In re Crededio* (7th Cir. 1985), 759 F.2d 589, 590-91; *In re Grand Jury Investigation* (3d Cir. 1979), 600 F.2d 420, 424-25; *Lambert v. Montana* (9th Cir. 1976), 545 F.2d 87, 89-90.

Cases considering these questions have determined that the contemnor bears the burden of demonstrating that the sanction has lost its coercive force and will not likely cause him to comply with the order of the court. (*Simkin v. United States* (2d Cir. 1983), 715 F.2d 34, 37; *In re Grand Jury Investigation*, 600 F.2d at 425; *Lambert*, 545 F.2d at 91.) The credibility of the contemnor's avowed refusal to comply with the order is one circumstance that a court may consider in determining whether a sanction for civil contempt remains coercive. (*Crededio*, 759 F.2d at 593.) There is no requirement, however, that a court accept a contemnor's declaration as dispositive. (*In re Parrish* (2d Cir. 1986), 782 F.2d 325, 327; *Simkin*, 715 F.2d at 37; *United States v. Dien* (2d Cir. 1979), 598 F.2d 743, 745.) "Obviously, the civil contempt power would be completely eviscerated were a defiant witness able to secure his release merely by boldly asserting that he will never comply with the court's order." *In re Grand Jury Investigation*, 600 F.2d at 425.

Apart from the contemnor's reasons for refusing to

comply with the underlying order, other criteria that a court may consider in making this determination include the age and health of the contemnor (*Catena v. Seidl* (1974), 68 N.J. 224, 228, 343 A.2d 744, 747), the length of the incarceration (*Catena*, 68 N.J. at 228, 343 A.2d at 747), and "the significance of the ends to be achieved" by the underlying order (*In re King* (1988), 110 Wash. 2d 793, 805, 756 P.2d 1303, 1310). In addition, a contemnor may offer evidence from other inmates, community members, or expert witnesses regarding the strength of his resolve not to comply with the order of the court. *Morgan v. Foretich* (D.C. App. 1989), 564 A.2d 1, 3, *vacated* (D.C. App. 1989), 564 A.2d 1, 20.

The unique nature of the finding required in these circumstances has been expressed as follows:

> "The determination to be made by the \*\*\* judge is far removed from traditional factfinding. What is called for is obviously not a retrospective determination of a historical fact, nor even a prospective determination of a future fact, such as the amount of medical expenses a tort victim will incur. The determination is not even akin to factfinding as to a future hypothetical matter, such as the profits a plaintiff would have made but for a defendant's actionable wrongdoing. Instead, the district judge is obliged to look into the future and gauge, not what will happen, but the prospect that something will happen." (Emphasis omitted.) *In re Parrish* (2d Cir. 1986), 782 F.2d 325, 327.

In view of the nature of this finding, and the trial judge's obvious advantage in seeing and hearing the witnesses firsthand, review of the decision is highly deferential. *Crededio*, 759 F.2d at 591; *Simkin*, 715 F.2d at 38.

Applying these principles of law to the facts in this case, we do not believe that the trial court's order of May 2, 1991, allowing the contempt citation to stand is erroneous. As we have noted, a civil contemnor bears the burden of demonstrating that the sanction imposed

on him has become punitive. In the proceedings below, the respondent, then 43 years old, did not present any testimony in support of his claim that the sanction entered in this case had ceased to be coercive. Rather, the respondent's principal contention was, and remains, that the length of confinement by itself—at the point relevant here, $3^1/2$ years—demonstrated that the sanction was not having a coercive effect.

In opposition to the contemnor's motion to vacate, petitioner Sanders introduced into evidence at the 1991 hearing two letters written by the respondent to the presiding judge in the case. The letters contained passages suggesting that the respondent knew more about the missing child's whereabouts than he had previously allowed. In one of the letters, dated September 3, 1990, the respondent stated, "This is a travesty of justice—the information which this Court is seeking is readily available from other sources." In a subsequent letter to the judge, dated November 4, 1990, the respondent declared, "I also fully understand that you've decline[d] to even consider one word of my previous writing—your mind seems completely locked toward anything I have to relate concerning this matter." It will be recalled that the respondent originally insisted that he possessed no information relevant to the case. The respondent's September letter also suggested that incarceration was exercising a coercive effect on him; he said then, "Mentally and physically... slowly, this institution is draining me."

The circuit judge denied the motion to vacate, concluding that the sanction remained coercive and that the respondent could comply with the order if he chose to. In open court on May 2, 1991, the circuit judge told the parties:

> "I did quite a bit of soul searching and thinking about this, and I was thinking about the effect of the three and a half years['] incarceration in the prison, and I was also

thinking about the fact that, in my mind, I am convinced that he can help us find the child. I am also thinking about the petitioner who doesn't know, hasn't known, where her child is for five or six years, and who probably will never know, unless the respondent decides to cooperate with us, which he won't.

I am thoroughly convinced in my mind that he could be a great help, and I am thoroughly convinced that, at least, he can lead us on the path to where we can find this child.

After a lot of consideration, deliberation, I don't think that his incarceration is, at the present time, punishment and uncoercive."

Similarly, in a written order memorializing the May 2, 1991, judgment, the judge made the following findings:

"3. Shephard has not produced any evidence or argument to this court to meet his burden of proving that the incarceration has lost its coercive value other than his statement that it is obvious after over three years of incarceration that he cannot comply.

4. The mere passage of over three years is insufficient to prove that the incarceration is no longer coercive.

5. The court has previously found, and continues to find, Shephard's statement that he already returned Deborah Sanders to her mother, and therefore cannot comply with this court's order, to be incredible.

6. There remains a realistic possibility that continued incarceration will coerce O.D. Shephard to comply with this Court's order to produce Deborah Sanders."

Although the passage of time is one consideration in determining whether a sanction for civil contempt remains coercive, time alone is not necessarily determinative. For obvious reasons, courts are reluctant to set precise limits on the length of time a civil contemnor may be obliged to stay in jail. The judge in the proceedings below carefully considered the record before him, which included the respondent's earlier explanation for his failure to comply with the court's order, the respondent's demeanor and credibility, and the significance of the underlying order. The present case involves a

missing child; according to the evidence, the respondent was the last person seen with the child and, following the abduction, he made a number of threats against her. As we have noted, a judge's determination of this question is entitled to great deference. On the record before us, we decline to disturb the judge's decision. There was sufficient evidence from which the circuit judge could find that the sanction continued to have a coercive effect.

Nor do we agree with the respondent that the circuit judge's finding that the contempt order remained coercive is simply speculative. As the appellate court noted, "The trial court's conclusion that Shephard's incarceration is coercive is not reduced to speculation in the sense that Shephard uses the word simply because it has yet to produce the desired result." 258 Ill. App. 3d at 631.

As a final matter, the respondent challenges what he perceives to be several constitutional defects in the Domestic Violence Act. As the appellate court found in the earlier appeal, the respondent's objections are controlled by the law of contempt, and not by the Domestic Violence Act. The prior appeal resolved, correctly, the respondent's contentions regarding the possibility of repeated commitments for indefinite periods of time and the limited availability of appointed counsel. (*Sanders*, 185 Ill. App. 3d at 729-30, 731-32.) In any event, the respondent is collaterally estopped from relitigating those challenges here. (See *Jamaica Inn, Inc. v. Daley* (1978), 72 Ill. 2d 415, 419-20; *City of Elmhurst v. Kegerreis* (1945), 392 Ill. 195, 207-08.) Finally, with regard to the respondent's new complaint that he was improperly denied a jury trial, the law is clear that there is no right to a jury trial for civil contempt. *Shillitani v. United States* (1966), 384 U.S. 364, 371, 16 L. Ed. 2d 622, 627, 86 S. Ct. 1531, 1536; *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 139.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE McMORROW took no part in the consideration or decision of this case.