■ In the Matter of CHARLES J. HYNES, as Deputy Attorney-General of the State of New York, Respondent, v HENRY M. SLOMA, Appellant.—Order unanimously reversed, on the law and facts, without costs, and petition

dismissed. Memorandum: Appellant has been found guilty of civil contempt and has been ordered committed to Niagara County Jail until he produces various documents and business records of the Fairchild Manor Nursing Home for the years 1970 to 1975 (see CPLR 2308). The enforcement of the order of commitment has been stayed pending resolution of this appeal. Although the evidence is not free from doubt, we accept the trial court's finding that all the records subpoenaed were in existence as late as June, 1975 and that appellant has failed to produce some of them. The People allege that they also have established to a "reasonable certainty" that the records were in the possession, custody or control of appellant in February, 1976, when the subpoena was served upon him (see *Pereira v Pereira,* 35 NY2d 301). They rely upon the familiar rule that conditions once existing may be presumed to continue until they are shown to have changed (see *Maggio v Zeitz,* 333 US 56, 65; *United States v Patterson,* 219 F2d 659; *Brune v Fraidin,* 149 F2d 325). This presumption, however, is "no more than a common-sense inference, as strong or as weak as the nature of the surrounding circumstances permits" *(United States v Patterson, supra,* p 661). On the evidence in this record, the People have not established the facts from which an inference may reasonably be drawn that appellant has the possession, custody or control of the missing records of the Fairchild Manor Nursing Home and that he may, therefore, be adjudicated guilty of civil contempt until he produces them. Appellant's father was the owner and "operator" of the Fairchild Manor Nursing Home and charged by law with the requirement of keeping financial records (10 NYCRR 730.9 [c], 86-1.4; US Code, tit 26, § 6001; cf. *United States v Johnson,* 247 F2d 5). The father took little part in the day-to-day management of the business, however, and the People contend that since appellant was the active administrator of the home he was chargeable with custody of the nursing records. Nonetheless, the father was observed in the home during the period June, 1975 and February, 1976 and the evidence indicates that appellant and his father had joint custody of the records. Significantly, appellant had a general power of attorney to act for his father but that document excluded authority over "records, reports and statements" (see General Obligations Law, §§ 5-1501, 5-1502K). The bookkeeper of the home testified that she had made a diligent search for the records in response to the subpoena served on appellant but had been unable to find many of those requested. She admitted that the missing records, if they existed, could have been kept in appellant's office but that no search was made of it. The office was also used by appellant's father on the infrequent occasions when he came to the nursing home. Appellant's father had the opportunity to remove the records and he also had the motive to remove them either for lawful or unlawful purposes. As the operator of the home, charged with the responsibility of keeping the records for Health Department or tax purposes, any wrongdoing in that respect would necessarily be charged to him if he failed to produce the records. He might, therefore, lawfully wish these records in his possession, particularly since they were not necessary for current operations at the home. Moreover, in view of the Moreland Commission nursing home inquiry pending in 1975 and the prior Federal tax audit of his personal returns, appellant's father might well have decided to remove the records to his Florida residence or destroy them to protect himself from possible criminal charges. Finally, we consider appellant's statement under oath that he did not have possession of the records. While admittedly self-serving, it must be weighed with all the evidence, and on balance we do not find the evidence sufficient to support the inference that appellant possessed the

records sought when he was served with the subpoena duces tecum. It is possible, of course, that the very act which freed appellant of liability in this civil contempt proceeding, namely, relinquishment of the records to another party such as his father, may have been performed with the intent to obstruct the investigation now taking place. Nevertheless, if the evidence fails to show that appellant had control of the records at the time of the subpoena, then his imprisonment will only coerce him, improperly, to give up his constitutional protection against self incrimination in exchange for his freedom (see *Curcio v United States,* 354 US 118). While we recognize the frustrations of the investigation, we are duty-bound to recognize also the constitutonal rights of those persons investigated. (Appeal from order of Erie Supreme Court—contempt.) Present—Cardamone, J. P., Simons, Goldman and Witmer, JJ.