In the Matter of CHARLES J. HYNES, as Deputy Attorney-General of the State of New York, Respondent, v ALEXANDER HARTMAN, Appellant.

First Department, July 13, 1978

### APPEARANCES OF COUNSEL

*Irving Anolik* of counsel for appellant.

*T. James Bryan* of counsel *(Charles J. Hynes, Deputy Attorney-General, pro se),* for respondent.

### OPINION OF THE COURT

MURPHY, P. J

Petitioner Hynes issued a subpoena in June of 1976 to respondent Hartman, the owner and operator of the Mosholu Parkway and Bainbridge Nursing Homes, requiring him to produce the books and records of those homes for the years 1970 through 1975. The respondent moved to quash the subpoena on the grounds that he had recently been audited by the New York State Department of Health and that there was no showing of criminality on his part. In his affidavit, Hartman never disclosed that some of the requested books and records could not be located. Suffice it to say that the motion to quash was denied.

Eventually, the respondent produced the 1972 through 1975 records for Mosholu and the 1973 through 1975 records for Bainbridge. On petitioner's renewed application to hold the respondent in contempt for failure to produce all the requested records, a hearing was held. At the commencement of the hearing, the court announced that the burden was on the respondent to show why the requested data was not produced. The court reasoned that the prior motion to quash was "pregnant with an admission that the moving party indeed has the books and records specified in the subpoena."

At the hearing, respondent called Felix Coronado, an auditor for the State Health Department, as his first witness. In May of 1975, Coronado began a 10-month audit of both homes. He maintained, at one point, that he had seen the 1971 general ledger book for Mosholu. Moreover, he alleged that his work papers indicated that his assistant had examined the book. At another juncture, Coronado testified that he did not receive the Mosholu records for 1969 through 1971.

With regard to the Bainbridge Home, the auditor testified that he did receive the general ledger for 1972. He did not examine it but his assistant made photocopies from it. He conceded that this home was only open for the latter part of 1972.

The respondent, his present accountant, his former accountant and his administrator testified that the requested records could not be found. They noted that some of the Mosholu records had been stored in Bainbridge when Mosholu was renovated in the early 1970's. They conjectured that the records might have been lost in transit or mistakenly discarded as refuse. These witnesses also stressed that two key personnel were unavailable to assist in this search. One bookkeeper had died and an accountant was living in retirement outside the country. The respondent did offer to reconstruct the records, as well as possible, for the petitioner.

Relying upon *Matter of Hynes v Sigety* (NYLJ, Aug. 5, 1977, p 13, col 1, affd 60 AD2d 808, app dsmd 43 NY2d 947), the hearing court found the respondent in civil contempt (CPLR 2308; Judiciary Law, § 753). In rejecting the respondent's contention that the books and records had mysteriously disappeared, the court stated (p 13, col 3), *inter alia,* that: "To permit the sole proprietor of a state regulated nursing home supported by public funds to successfully thwart a valid subpoena duces tecum with the limp and outrageous explantion, 'I don't know what happened to all my business records for two full calendar years,' would patently serve as a dangerous precedent." Books and records do not mysteriously vanish when a subpoena duces tecum is served by a Special Prosecutor.

Although a proceeding to punish for civil contempt is a civil proceeding, it is quasi-criminal in character. Therefore, the petitioner must be required to establish his affirmative case by more than a fair preponderance of the evidence. To hold a respondent in civil contempt, a petitioner must demon-

strate with reasonable certainty that the respondent had failed to comply with a subpoena or order of the court. *(Panza v Nelson,* 54 AD2d 928; see, generally, 22 Carmody-Wait 2d, NY Prac, § 140:123.)

In this proceeding, the petitioner was required to establish, with reasonable certainty, that the respondent willfully failed to turn over records in his possession when served with the subpoena in June of 1976. (See *Matter of Hynes v Sloma,* 59 AD2d 1014; *People v Shapolsky,* 8 AD2d 122.) The petitioner had the burden of going forward, in the first instance, with his affirmative case. At the hearing, the court improperly placed the burden on the respondent to show why the records were not produced. Even though the respondent had previously made a motion to quash the subpoena, that motion was made on grounds totally unrelated to whether the requested records were extant. While the respondent would have been more candid had he immediately stated that the records were missing, his failure to do so did not constitute an admission that the subpoenaed items were in existence.

While the hearing court relied upon *Sigety (supra),* that case is distinguishable in several important aspects. First of all, respondent Hartman testified and thus exposed himself to the penalties of a perjury conviction should his answers later be proven false *(People v Renaghan,* 33 NY2d 991). Sigety did not testify and did not expose himself to a possible perjury charge. Secondly, the evidence adduced at the hearing was inconclusive. In particular, Coronado's conflicting testimony raised serious doubts as to whether or not he had actually seen the requested items. Based upon that wavering testimony, one could not infer with reasonable certainty that the books had been in existence in 1975 and had continued in existence until June of 1976 when the subpoena was served. The evidence in the *Sigety* hearing was of a conclusive nature since there was no patent contradiction in the testimony of a principal witness and Sigety himself never testified in his own defense. Finally, the respondent volunteered to assist in the reconstruction of the records while Sigety did not co-operate in that manner.

While we recognize the frustrations often met by the petitioner in the course of his investigation, we cannot disregard the fact that the proof in this record was insufficient to adjudicate the respondent in civil contempt *(Matter of Hynes v Sloma, supra,* pp 1015-1016). Accordingly, the judgment

(denominated "order") of the Supreme Court, New York County (McQUILLAN, J.), entered April 4, 1978, adjudicating the respondent in civil contempt, should be reversed, on the law and on the facts, the adjudication of civil contempt should be vacated and the application should be denied, without costs.

SILVERMAN, EVANS, LANE and MARKEWICH, JJ., concur.

Judgment (denominated an order), Supreme Court, New York County, entered on April 4, 1978, unanimously reversed, on the law and on the facts, without costs and without disbursements, the judgment and the adjudication of civil contempt vacated, and the application denied.