Charles E. SIGETY, Petitioner–Appellee,

v.

Robert ABRAMS, Attorney General of the State of New York, Charles Hynes, Deputy Attorney General of the State of New York (Special Prosecutor), and Edward A. Pichler, Sheriff of the City of New York, Respondents–Appellants.

No. 1153, Docket 80–2044.

United States Court of Appeals, Second Circuit.

Argued May 20, 1980.

Decided Sept. 2, 1980.

Ira Lee Sorkin, New York City (Eugenie C. Gavenchak, Squadron, Ellenoff, Plesent & Lehrer, New York City, of counsel), for petitioner–appellee.

T. James Bryan, Sp. Asst. Atty. Gen., State of New York, New York City (Charles J. Hynes, Deputy Atty. Gen., State of New York, New York City, of counsel), for respondents–appellants.

Before OAKES and MESKILL, Circuit Judges, and BONSAL, District Judge.*

MESKILL, Circuit Judge:

Charles Sigety petitioned the United States District Court for the Southern District of New York, Mary Johnson Lowe, *Judge*, for a writ of habeas corpus, contending that his incarceration under a state warrant of commitment for civil contempt violated his rights under the Fifth and Fourteenth Amendments. After determining that the contempt adjudication had been based on testimony elicited in violation of Sigety's privilege against self–incrimination, the district court ordered that the petitioner be released from custody unless a review hearing, as provided by state law, were held within sixty days to reevaluate the grounds of his incarceration. The state appeals this ruling, challenging the conclusion that Sigety's Fifth Amendment rights were violated and arguing that the finding of civil contempt was entirely proper. We reverse.

## I. BACKGROUND

Charles Sigety is the sole proprietor of the Florence Nightingale Nursing Home. In 1975, the Deputy New York State Attorney General, acting in his capacity as Special Prosecutor for Nursing Homes (Special Prosecutor), served Sigety with a subpoena duces tecum [1] directing him to produce the

---

* Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

1. The subpoena in this case was issued pursuant to N.Y. Exec. Law § 63(8) (McKinney).

This section provides for investigations by the attorney general into matters concerning the "public peace, public safety and public justice" and authorizes the attorney general to subpoena witnesses and require production of documents relevant to the inquiry.

nursing home's books and records for the years 1970 through 1975. After various attempts to quash or avoid the subpoena failed, Sigety produced 120 cartons containing records for all designated years except 1970 and 1971. The Special Prosecutor moved for an order holding Sigety in contempt for failing to comply with the subpoena, pursuant to New York Civil Practice Law and Rules § 2308(b).[2] At the hearings held on this motion, Sigety introduced several witnesses in an attempt to show that the missing records could not be located. However, the state court, Peter J. McQuillan, Justice, rejected Sigety's explanation for noncompliance with the subpoena, relying in some degree upon the inference that one once in possession of documents continues in possession thereof, and cited him for contempt. After this decision was affirmed by the New York appellate courts, *Hynes v. Sigety*, 60 A.D.2d 808, 401 N.Y.S.2d 749 (1st Dep't), *appeal dismissed, Hynes v. Sigety*, 43 N.Y.2d 947, 403 N.Y.S.2d 896, 374 N.E.2d 1247 (1978), Sigety petitioned for a writ of habeas corpus in the United States District Court for the Southern District of New York. Rejecting Sigety's claims that the state court hearings had infringed his Fifth Amendment right against self–incrimination, Judge Morris E. Lasker denied the petition and the request for a certificate of probable cause. *Sigety v. Lefkowitz*, 78 Civ. 1300 (S.D.N.Y.1978). Sigety's application for a certificate of probable cause in this Court was denied without opinion.

Sigety was finally incarcerated for his civil contempt on April 12, 1978, at the Queens House of Detention. On May 15, 1978, he filed a motion in the state court for a review of his contempt, based on his own affidavit attesting to his lack of knowledge of the whereabouts of the missing records and his inability to produce them.[3] The state court rejected Sigety's application. In August, 1978, Sigety again asked for a review of his contempt, offering this time to testify personally about his knowledge of the books and records.

While offering to testify, Sigety also requested that any cross–examination be limited to his present ability to comply with the subpoena, on the ground that anything beyond that might force him to incriminate himself. Sigety reasoned that because the state judge had previously rejected the explanations of his witnesses, the only avenue open to him to attack his contempt was through his own testimony, which he was thus compelled to offer. Because the testimony was compelled, Sigety asserted that he retained a Fifth Amendment right to refuse to answer incriminating questions

2. N.Y.C.P.L.R. § 2308(b) provides for enforcement of non-judicial subpoenas such as that issued in the instant case under N.Y. Exec. Law § 63(8), *see* note 1, *supra*. Prior to its amendment in 1977, section 2308(b) provided in relevant part:

(b) Non-judicial. Unless otherwise provided, *if a person fails to comply with a subpoena which is not returnable in a court*, the issuer . . . may move in the supreme court to compel compliance.

\* \* \* \* \* \*

If a person so subpoenaed attends or is brought before such person or body, but refuses without reasonable cause . . . to produce a book, paper or other thing which he was directed to produce by the subpoena . . . the court, upon proof by affidavit, may issue a warrant directed to the sheriff of the county where the person is, committing him to jail, there to remain until he submits to do the act which he was so required to do or is discharged according to law. . . .

3. Sigety requested review of his contempt pursuant to N.Y.C.P.L.R. § 2308(c), which states in pertinent part:

(c) Review of proceedings. Within ninety days after the offender shall have been committed to jail he shall, if not then discharged by law, be brought, by the sheriff, or other officer, *as a matter of course personally* before the court issuing the warrant of commitment and a review of the proceedings shall then be held to determine whether the offender shall be discharged from commitment. At periodic intervals of not more than ninety days following such review, the offender, if not then discharged by law from such commitment, shall be brought, by the sheriff, or other officer, personally before the court issuing the warrant of commitment and further reviews of the proceedings shall then be held to determine whether he shall be discharged from commitment. . . .

Justice McQuillan, who presided over the initial contempt hearings, also presided over the subsequent review proceedings.

beyond his statements on direct examination. In addition to attempting to limit cross–examination, Sigety urged that the Special Prosecutor be required to present proof of Sigety's present ability to comply with the subpoena. The state court rejected both requests. After Sigety agreed to testify, he was released from his 129–day confinement.

Testifying at the review hearing, Sigety denied having had any knowledge of the whereabouts of the records on the date the subpoena was served. When the Special Prosecutor questioned him about the records' location prior to issuance of the subpoena, Sigety refused to answer, invoking the protection of the Fifth Amendment. The Special Prosecutor moved to strike Sigety's direct testimony, but Justice McQuillan instructed Sigety to respond to the Special Prosecutor's questions, allowing Sigety a continuing objection to all questions pertaining to the location of the records prior to the subpoena's issuance.

Evaluating Sigety's testimony, Justice McQuillan found that Sigety had not given a reasonable explanation for his failure to produce the 1970 and 1971 books and records. He therefore continued the warrant of commitment stating that Sigety would be released when he produced the missing books and records or offered a reasonable explanation for their nonproduction. Justice McQuillan's order was again affirmed by the New York appellate courts. Hynes v. Sigety, 67 A.D.2d 872, 413 N.Y.S.2d 1019 (1st Dep't), app. dismissed, 47 N.Y.2d 763, 417 N.Y.S.2d 465, 391 N.E.2d 301, leave to appeal denied, —— A.D.2d —— (1st Dep't 1979).

In June, 1979, Sigety filed a second petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. Citing the compulsion under which he testified, Sigety again argued that his incarceration was ordered continued in violation of his Fifth Amendment rights. Sigety also alleged that he was deprived of his due process rights because the state court had based its finding of contempt on a subjective refusal to accept the proffered explanation for the nonproduction despite the fact that Sigety had placed himself in danger of a perjury charge if his testimony could be proven false. Sigety further objected to the state court's failure to require the Special Prosecutor to offer evidence demonstrating that Sigety had the present ability to comply with the subpoena. Judge Lowe, agreeing that Sigety's further incarceration had been based on testimony compelled in disregard of his privilege against self–incrimination, ordered that unless a review hearing was held within sixty days, Sigety was to be released from custody. Sigety v. Abrams, 492 F.Supp. 1123 (S.D.N.Y.1980). Judge Lowe reasoned that Sigety had had a duty to give nonprivileged direct testimony that he was unable to comply with the subpoena duces tecum, and that such testimony was "auxiliary" to the nonproduction of the books and records, citing United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 318 (2d Cir. 1979). After establishing that Sigety's direct testimony was compelled, Judge Lowe concluded that Sigety's assertion of his Fifth Amendment privilege to refuse to answer questions concerning the whereabouts of the books and records on cross–examination had been proper and, therefore, that Justice McQuillan had erred in continuing Sigety's incarceration based on the compelled testimony. The Special Prosecutor appeals Judge Lowe's decision, arguing that Sigety's direct testimony was voluntary and that his invocation of the Fifth Amendment on cross–examination was, therefore, improper.

Assuming arguendo that the District Judge's determination that Sigety was within his rights in invoking the Fifth Amendment on cross–examination was correct, we are unable to affirm the decision below on that ground because we find nothing incriminating in his testimony. Further, we reject the alternative grounds offered by Sigety as supporting the issuance of the writ, and we hold that the state court's exercise of its contempt power violated none of petitioner's rights.

## II. FIFTH AMENDMENT PRIVILEGE

The district court premised issuance of the writ of habeas corpus on the theory that the state court's commitment order was based on testimony compelled in contravention of Sigety's privilege against self–incrimination.[4] We are unable to affirm the decision on this ground. Our examination of Sigety's compelled responses indicates that his continued commitment was not based on any testimony that can be characterized as "incriminating."

On direct examination Sigety admitted receipt of the subpoena in 1975, denied personal possession of the books and records at the time the subpoena was issued, and asserted a total lack of ability to produce the missing items. He also testified about the conditions of his recent incarceration in the Queens House of Detention. On cross–examination, after initial skirmishes among the attorneys and the court, Sigety testified under a continuing objection based on his Fifth Amendment privilege. This testimony, which occupies approximately 180 pages of the record on appeal, covered many topics, from Sigety's initial venture into the nursing home business, to his daily reading habits, and finally to his control over the nursing home's accounting procedures. Throughout this questioning, Sigety continued to deny both possession and knowledge of the missing items. Sigety admitted destruction of certain payroll records and timecards during a pre–subpoena search for personal files at the nursing home, described various post–subpoena searches for the books and records, and explained his knowledge of the investigation from its commencement in 1975, but at no time during the cross–examination did Sigety make any incriminating statements. Indeed, in the face of wide–ranging and vigorous questioning by the Special Prosecutor, Sigety offered nothing but exculpatory answers. While such testimony may have influenced the state judge's determination that Sigety had failed to offer a reasonable explanation for his noncompliance, we fail to see how it could have incriminated Sigety. Assuming without deciding that his testimony under cross–examination should not have been compelled over his claims of privilege, it is apparent under the circumstances of this case that the issuance of the writ constituted inappropriate redress for this alleged infringement of his right against self–incrimination.

Sigety was held in contempt for a failure to produce items called for by a subpoena duces tecum; he was not incarcerated for attempting to invoke the Fifth Amendment nor for failing to respond to questions asked over his assertion of the privilege nor for giving incriminating testimony at the hearing. Although the parties and the district court devote much discussion to the existence ·of Sigety's Fifth Amendment privilege, in our view it is not sufficient justification for issuance of the writ that Sigety may have been compelled to give non–incriminating testimony in possible violation of this privilege. *See, e. g., Rhodes v. Houston,* 418 F.2d 1309 (8th Cir. 1969), *cert. denied,* 397 U.S. 1049, 90 S.Ct. 1382, 25 L.Ed.2d 662 (1970); *LeBlanc v. Spector,* 378 F.Supp. 310 (D.Conn.1974).

## III. DUE PROCESS

On appeal, Sigety offers alternative grounds to support the relief granted be-

---

4. *Compare United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313 (2d Cir. 1979). Discussing the concept of waiver of the Fifth Amendment privilege against self–incrimination, we held in *O'Henry's* that when an agent of an organization fails to produce documents that are the subject of a valid subpoena, the agent must give sworn testimony that he does not possess the documents. We characterized this testimony as "auxiliary" to the non–production of records, analogizing to the characterization of testimony identifying produced documents, which has always been considered unprivileged. *Id.* at 318. By giving this unprivileged testimony, an agent is not deemed to have waived his Fifth Amendment rights for purposes of cross–examination. It is apparent that Sigety attempted to present testimony similar to that which was protected in *O'Henry's,* but the state court refused to honor his privilege. Because we have concluded that Sigety's testimony was not in any event incriminating, however, the writ of habeas corpus cannot issue based on a purported violation of Fifth Amendment rights.

low. Claiming that the Special Prosecutor did not meet the burden of proof for civil contempt, Sigety argues that his incarceration is a violation of due process. Additionally, relying on his own unequivocal testimony at the review hearing, Sigety asserts that the state court ruling is a punishment for perjury rather than contempt and thus constitutes an abuse of the court's power. After examining the record of the state court proceedings in this case and analyzing the power of courts in civil contempt proceedings in general, we must reject both arguments.

## A. Burden of Proof

In his initial decision finding Sigety in contempt for failure to comply with the subpoena duces tecum, Justice McQuillan, addressing the burden of proof issue, stated that the Special Prosecutor was required to demonstrate by clear and convincing evidence that Sigety did not produce the requested documents and that Sigety had present possession, custody, or control of the documents. After finding that the Special Prosecutor had carried this burden with the aid of the inference of continuing possession, Justice McQuillan described Sigety's burden as requiring him to offer in rebuttal a reasonable explanation for his noncompliance. Referring to the testimony of Sigety's five witnesses, Justice McQuillan characterized Sigety's explanation for non-production as "surprising, suspicious and inherently incredible." At the subsequent review hearing in August, 1978, Sigety requested Justice McQuillan to require the Special Prosecutor to prove that Sigety had the *present* ability to produce the missing documents. Justice McQuillan refused, noting that Sigety had not demonstrated any change in his ability to comply from the time of the initial finding and, therefore, that the burden was still on Sigety to offer a reasonable explanation for his noncompliance.

In his argument to this Court, Sigety urges that the state court's allocation of the burden of proof at the 1978 review was erroneous and that there was not sufficient evidence to support the finding of present ability to comply.[5] We disagree. Sigety has already challenged Justice McQuillan's initial finding as to his possession of the documents in both state and federal courts. As noted above, the New York courts affirmed the original contempt decision and the federal district court denied Sigety's original habeas corpus petition. This initial finding is *res judicata* in these proceedings. *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2d Cir. 1977). The only question properly before us, therefore, is whether the state court incorrectly assigned the burdens of proof in the subsequent review proceedings in August, 1978.

The Special Prosecutor argues that the burden remains on Sigety to explain his noncompliance and that absent any substantial change in the pertinent facts, the state should not be required to prove repeatedly that Sigety retains possession and control of the documents. Justice McQuillan accepted this argument, noting that the circumstances had not changed since his initial finding and that the inference of continuing possession remained valid and had not been rebutted. Clearly, an inference of continuing possession may be properly drawn in a case involving books and records known to be in the possession of a subpoenaed witness shortly before the issuance of a subpoena demanding their production. *United States v. Goldstein*, 105 F.2d 150 (2d Cir. 1939); *In re Arctic Leather Garment Co.*, 89 F.2d 871 (2d Cir. 1937). In *United States v. Patterson*, 219 F.2d 659 (2d Cir. 1955), we discussed the inference of continuing possession, stating that it is "nothing more than a process of reasoning

**5.** Sigety argues that under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we must review the sufficiency of the evidence, and that we must affirm the issuance of the writ of habeas corpus if we determine that a rational trier of fact could not have found proof of guilt by clear and convincing evidence. Assuming without deciding that *Jackson* should be applied in collateral attacks on state adjudications of civil contempt, we regard the evidence sufficient to support a finding that Sigety had the present ability to comply with the subpoena.

from one fact to another, an argument which infers a fact otherwise doubtful from a fact which is proved," *quoting Maggio v. Zeitz*, 333 U.S. 56, 65, 68 S.Ct. 401, 406, 92 L.Ed. 476 (1948). We also noted that "[t]he presumption is thus no more than a common–sense inference, as strong or as weak as the nature of the surrounding circumstances permit." *Patterson*, 219 F.2d at 661. The facts in the instant case justify the drawing of the common–sense inference that the documents are still in Sigety's possession. No new evidence to the contrary has been introduced since the initial hearing.

It is true that at Sigety's most recent review hearing, Sigety himself testified to his inability to produce instead of relying on the testimony of others as he had at his original hearing. The significance of this proffer is, however, not as great as Sigety claims, for as Justice McQuillan determined, Sigety's explanation added nothing to the testimony of his previous witnesses. Sigety offered essentially the same explanation his witnesses had given at the initial hearing; he merely claimed that he did not know where the documents were, whether they had been destroyed, or how they could ever be produced. As Justice McQuillan ruled, this "explanation" was not sufficient to shift the burden of proof to the state, for under the circumstances, Sigety's story failed to provide a reasonable explanation for the nonproduction of the subpoenaed records.

 Sigety contends that his 129-day incarceration, coupled with his absolute denial of the ability to comply, has attenuated the strength of the inference of possession to such a degree that there was insufficient evidence for the contempt determination. Although we agree that over time the inference that Sigety continues to possess the documents will be weakened, we cannot agree that this time has arrived. *Cf. Hankins v. Civiletti*, 614 F.2d 953 (5th Cir. 1980)

(petitioner kept incarcerated to date under civil contempt citation rendered in 1978 for nonproduction of documents). In a similar situation in bankruptcy proceedings the Supreme Court has stated: "It is everywhere admitted that even if [petitioner] is committed, he will not be held in jail forever if he does not comply. His denial of possession is given credit after demonstration that a period in prison does not produce the goods. The fact that he has been under the shadow of prison gates may be enough, coupled with his denial and [evidence of present conditions or intervening events], to convince the court that his is not a wilful disobedience which will yield to coercion." *Maggio, supra*, 333 U.S. at 76, 68 S.Ct. at 411. The state in the instant case met the initial burden of showing by clear and convincing evidence that Sigety had the ability to produce the missing documents. *See Stringfellow v. Haines*, 309 F.2d 910 (2d Cir. 1962); *United States v. Johnson*, 247 F.2d 5 (2d Cir.), *cert. denied*, 355 U.S. 867, 78 S.Ct. 116, 2 L.Ed.2d 74 (1957). *See also, United States v. Rizzo*, 539 F.2d 458 (5th Cir. 1976); *Cagle v. Scroggins*, 410 F.2d 741 (5th Cir. 1969); *Securities Investor Protection Corp. v. Executive Securities Corp.*, 433 F.Supp. 470 (S.D.N.Y.1977). The simple passage of time in this case, 129 days, is not yet sufficient to disprove the continuing inference that may be drawn from the initial findings. We are unable to find that Justice McQuillan erred in holding that the state here is not under a continuing obligation to prove present ability to comply where the contemnor has not demonstrated any intervening circumstance to justify nonproduction and relies only on the same explanation that was rejected in the original contempt hearing and a relatively brief period of confinement. By this holding we do not intend to express any opinion on the outcome of this case were Sigety to come forward with positive proof of some change in the status of the documents rendering it impossible for him to produce them.[6]

---

6. Although we hold in this case that the state courts were correct in finding Sigety was able to comply with the subpoena, as we noted above this assumption may become weaker

with time. The Supreme Court has stated that continued incarceration for civil contempt depends upon the ability of the contemnor to comply with the court's order, *Maggio v. Zeitz*,

## B. Contempt Power

Sigety argues that the civil contempt citation, issued in essence because Justice McQuillan did not credit his sworn statement of inability to comply, constituted in realty a summary punishment for perjury and that the court thereby acted beyond its lawful authority. Sigety urges this Court to affirm the lower court's issuance of the writ because his incarceration thus violated his rights to due process.

There is no question that the New York courts had the power to order Sigety incarcerated for his failure to obey the subpoena duces tecum. " 'The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge.' " *In re Debs*, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895), *quoting Watson v. Williams*, 36 Miss. 331, 341. *See also United States v. United Mine Workers*, 330 U.S. 258, 330–32, 67 S.Ct. 677, 713–14, 91 L.Ed. 884 (1947); Moore's Federal Practice, ¶ 38.33[1] (1979 ed.); Wright & Miller, Federal Practice and Procedure § 2960 (1973). The Supreme Court more recently has characterized this as the "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Justice McQuillan in holding Sigety in contempt, was acting pursuant to C.P.L.R. § 2308(b) which allows a court to commit a person to jail "there to remain until he submits to do the act which he was so required to do or is discharged according to the law."

333 U.S. 56, 76, 68 S.Ct. 401, 92 L.Ed. 476 (1948), and several courts recently have found due process violations where a contempt citation is deemed to have lost its coercive power and become essentially punitive. *See, e. g., In re Grand Jury Investigation*, 600 F.2d 420 (3d Cir. 1979), and *Lambert v. State*, 545 F.2d 87 (9th Cir. 1976). The Third Circuit avoided deciding when a contempt citation becomes punitive because the contempt in that case had been rendered pursuant to the federal recalcitrant witness statute, 28 U.S.C. § 1826(a) which sets a maximum limit of 18 months incarceration for witnesses found in civil contempt of court. In *Lambert* the Ninth Circuit remanded for a determination of the coercive effect of the

■ As broad as the power of civil contempt may be, it does not include the power to punish for the crime of perjury, either in federal court, *Ex Parte Hudgings*, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656 (1919), or in the courts of New York, *People ex rel. Valenti v. McCloskey*, 6 N.Y.2d 390, 189 N.Y.S.2d 898, 160 N.E.2d 647 (1959). This limit on the contempt power, however, does not require a court to accept every explanation offered by a party seeking a method by which to avoid compliance with a subpoena. *Nilva v. United States*, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); *Lopiparo v. United States*, 216 F.2d 87 (8th Cir. 1954), *cert. denied*, 384 U.S. 916, 75 S.Ct. 297, 99 L.Ed. 718 (1955); *United States v. McGovern*, 60 F.2d 880 (2d Cir.), *cert. denied*, 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561 (1932). In the instant case Justice McQuillan was unable to accept Sigety's explanation, finding his testimony "equivalent to no explanation whatsoever [on] why the 1970 and 1971 books and records were not produced." It is apparent that Justice McQuillan rejected Sigety's explanation because he found that it was not *reasonable*. In fact he stated that it was no explanation at all. Thus the fact that he may also have disbelieved the testimony is not critical to our decision.

Sigety argued before the New York courts and continues to assert on this appeal that by testifying unequivocally and subjecting himself to a perjury charge he has avoided a charge of civil contempt. We agree with Justice McQuillan that Sigety's

incarceration where the appellant had been imprisoned for civil contempt for 16 months, although if he had been convicted for criminal contempt, the maximum penalty would have been $500 or 6 months imprisonment or both. *Lambert*, 545 F.2d at 91. *See also McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972); *United States v. Dien*, 598 F.2d 743 (2d Cir. 1979).

Sigety's 129-day imprisonment obviously does not yet parallel the sentences questioned in either the Third or the Ninth Circuits, and the contempt adjudication may again be questioned in future review hearings held as directed by N.Y.C.P.L.R. § 2308(c), *see* note 3 *supra*.

position must be rejected. Sigety's duty under the subpoena duces tecum was to produce the documents or a reasonable explanation for their nonproduction. This duty cannot be discharged merely by offering unreasonable testimony under oath.[7] The availability of perjury charges does not compel acceptance of any explanation Sigety decides to offer to the court. Sigety's testimony was "subject to the appraisal by the court that heard [it]. It was the judge of his credibility and of the weight to be given to his testimony." *Nilva*, 352 U.S. at 395, 77 S.Ct. at 437, *citing Lopiparo*, 216 F.2d at 91.

In both his initial decision finding Sigety in contempt and his decision after the review hearing, Justice McQuillan examined extensively the adequacy of Sigety's explanation and the definition of "reasonable" in these circumstances. It is apparent from these opinions that Justice McQuillan was aware of the requirements for compliance with the subpoena and that

he applied the proper standards in rejecting Sigety's explanation. Thus, while we agree that contempt is an improper method by which to punish perjury, we conclude on the basis of the record of the proceedings below that Justice McQuillan did not err in imposing civil contempt for its remedial, coercive power to convince Sigety to comply with the subpoena.[8] *Shillitani*, 384 U.S. at 370, 86 S.Ct. at 1535. An examination of Sigety's proffered explanation also demonstrates that it is not necessary for this Court to determine the credibility of the explanation, just as it was unnecessary for Justice McQuillan to do so. Sigety testified simply that he did not have the ability to comply with the subpoena without ever explaining *why* he could not produce the records. As Justice McQuillan found, this is equivalent to no explanation at all. The truth of Sigety's statements is irrelevant to a decision whether they constitute a reasonable explanation for nonproduction. The

7. Sigety relies on *People ex rel. Valenti v. McCloskey*, 6 N.Y.2d 390, 189 N.Y.S.2d 898, 160 N.E.2d 647 (1959), and *Hynes v. Hartman*, 63 A.D.2d 1, 406 N.Y.S.2d 818 (1st Dep't 1978), to support his perjury argument. This reliance is misplaced. Although the *Valenti* court did state that perjury is not punishable as a civil contempt, the holding in that case applied to defendants testifying under compulsion of a subpoena ad testificandum. The court reversed the contempt citations because the answers given in response to the grand jury's questions were definite and unequivocal and the contempt adjudication was for the purpose of compelling a "character of testimony which the court would deem to be truthful." *Valenti*, 6 N.Y.2d at 404, 189 N.Y.S.2d 898, 909, 160 N.E.2d 647, *citing Ex Parte Hudgings*, 249 U.S. 378, 384, 39 S.Ct. 337, 340, 63 L.Ed. 656 (1919). In the instant case Justice McQuillan rejected Sigety's explanation because it was unreasonable under the circumstances, not because it was untruthful.

As Justice McQuillan found in his opinion at the review hearing, the *Hartman* decision is also distinguishable. In *Hartman* the New York Supreme Court, Appellate Division reversed a contempt adjudication rendered by Justice McQuillan in a very similar situation. Deciding that Justice McQuillan had improperly placed the burden on the contemnor to show why records were not produced, the Appellate Division specifically distinguished the prior *Sigety* decisions on three grounds. First, the contemnor in *Hartman* had testified under pen-

alty of perjury; second, the evidence introduced by the state to establish the existence of the books was inconclusive; and third, the contemnor had offered to reconstruct any missing documents. Confronted with the *Hartman* decision at the review hearing, Justice McQuillan pointed out that the proper test to be applied is "not whether respondent may be prosecuted for perjury. The test is whether respondent has proffered a reasonable explanation for the nonproduction of 1970 or 1971 documents." Again distinguishing *Hartman*, Justice McQuillan cited the conclusive evidence in the *Sigety* case, in contrast to that in *Hartman*. We agree with Justice McQuillan that these decisions do not require the release of any contemnor who offers an explanation for his contempt under oath subject to penalty of perjury for a false explanation.

8. According to the Supplemental Appendix submitted to this Court by Sigety, portions of the missing documents have been located among 9 cartons of records recently turned over to the Special Prosecutor. Upon being informed of this development, Justice McQuillan stated: "It would appear that the coercive nature of the order had some impact . . . . it appears that the order of this Court is having its intended purpose, in that after an appellate review was completed in the New York courts, the 1970 and 1971 general ledgers were produced by respondent." Supplemental Appendix at 41, 54–55.

judgment of the district court is reversed and the case remanded with instructions to dismiss the petition.