OPINION OF THE COURT
Harold J. Rothwax, J.
On December 9, 1983, the defendant was served, in person, with a subpoena commanding him to appear as a witness before the Seventh Special Rackets Grand Jury of New York County. The Grand Jury was investigating suspected organized crime loan sharking and extortion. The defendant failed to appear and did not communicate, with the Grand Jury on or before the return date for the subpoena. The Grand Jury indicted the defendant for contempt in the second degree (Penal Law, § 215.50, subd 3) a class A misdemeanor. The defendant voluntarily appeared before the court for arraignment on the initial indictment on January 25, 1984. During colloquy a question arose as to whether the defendant acknowledged service of a second subpoena the previous day. Therefore, the defendant was served, in open court, with a third subpoena again commanding him to appear before the Grand Jury, this time on January 27. The defendant was released under bond, after being warned that failure to appear before the Grand Jury on January 27 would result in the court reevaluating the nature and amount of his recognizance. The defendant did not appear or otherwise communicate with the Grand Jury on January 27. His bond was revoked and a bench warrant issued. On January 31, he again voluntarily appeared before the court. He was informed that the Grand Jury had again indicted him for misdemeanor contempt *3 for his second failure to appear pursuant to subpoena. The defendant was once again served with a subpoena to testify before the Grand Jury, forthwith. His attorney stated that defendant would decline to respond to the subpoena on grounds of his privilege against self incrimination. The court ordered the detective who served the subpoena to take custody of the defendant and to bodily escort him to the Grand Jury room. Upon being produced before the Grand Jury, the defendant refused to be sworn as a witness. He objected to the proceedings on numerous grounds. He returned before the court at the Assistant District Attorney’s suggestion and reiterated these objections, which were overruled by the court. He was again ordered to proceed to the Grand Jury to be sworn as a witness and to answer all legal and proper questions. Upon returning to the Grand Jury the defendant persisted in his refusal to be sworn, despite the Assistant District Attorney’s explanation of the transactional immunity which he would automatically receive by operation of law when sworn, and despite an admonition that he was subject to indictment for criminal contempt in the first degree, a class E felony (Penal Law, § 215.51). The Grand Jury ultimately dismissed the defendant without his having been sworn. He was released from custody and restored to bail. He was subsequently indicted for the felony.
In the course of the proceedings the defendant made numerous objections which he now renews, with some additions, in support of his motion to dismiss these indictments.
DUE PROCESS
The defendant contends that he was denied due process of law by having been precluded from contesting the Grand Jury’s interest in him to the extent it was based upon electronic surveillance (People v Einhorn, 35 NY2d 948); and by having been compelled to appear before the Grand Jury by the court’s custodial order.
In regard to the Einhorn issue, the defendant was not entitled, by virtue of receipt of a Grand Jury subpoena, to make a motion to suppress evidence before the Grand Jury even though obtained through illegal electronic surveillance. (People v McGrath, 46 NY2d 12, 26.) The Einhorn proceeding may be initiated only by a witness before the Grand Jury who “during the Grand Jury proceeding” (People v Einhorn, supra, p 949) requests to be brought before the court for an inquiry to determine “whether or not the basis for the questioning of the witness was founded on [illegal] wiretap evidence” (supra, at p 950; emphasis added). The court’s inquiry during pendency of the *4 Grand Jury investigation is limited to determining whether “there is an absence of a court order permitting the eavesdropping or the Government concedes the illegality of the surveillance or * * * there has been a prior judicial adjudication of illegality” (People v McGrath, supra, at p 27). If none of these factors exist, then the witness must return to the Grand Jury to answer responsively or suffer indictment for contempt. If either the witness carries his preliminary burden or, upon prosecution for contempt, can show that illegal surveillance was employed (People v McGrath, supra, at p 23, n 4), then the court must consider whether the “questioning * * * before the Grand Jury * * * emanated from [such] wiretaps [and thus] constitutes evidence derived from the use or disclosure of the contents of the intercepted conversations” (People v De Martino, 71 AD2d 477, 484). If the government can affirmatively “demonstrate that the questions it used before the Grand Jury in interrogating the defendants are derived from a * * * source wholly independent of the electronic surveillance or that the connection * * * is so ‘attenuated’ as to dissipate the taint” then the examination would be appropriate (supra, at p 484). It is obvious that no such determination can be made without comparison of the content of the unlawfully obtained conversations and the subject matter of the questions propounded to the witness. A person who refuses to be sworn has not been called upon to respond to any questions and therefore has no standing to challenge the possible derivative use of unlawful surveillance. Any causal relationship between illegal wiretapping and the summons to testify is attenuated by the independently unlawful act of refusing to be sworn. (See People v McGrath, supra.)
The custodial order pursuant to which defendant was compelled to appear before the Grand Jury was authorized by CPLR 2308, which permits a court to “issue a warrant directing a sheriff to bring [a recalcitrant] witness into court” (CPLR 2308, subd [a]) or “before the person or body requiring his appearance” (CPLR 2308, subd [b]). Since it is a limited process which does no more than compel a witness to appear-to respond to a subpoena which he has previously ignored, it does not offend due process in the manner of a forthwith subpoena duces tecum used as a search warrant (cf. Interfaith Hosp. v People, 71 Misc 2d 910, 912-913) or of a warrant of attachment by which proceedings for civil contempt were formerly initiated. (Cf. Judiciary Law, § 756 [L 1977, ch 437, § 2], with Judiciary Law, former § 757 [repealed L 1977, ch 437, § 1]; see Long Is. Trust Co. v Rosenberg, 82 AD2d 591, 594-595.) Nor is the warrant to appear a warrant of commitment. Any further proceedings to *5 compel compliance with the subpoena by fine or imprisonment or to summarily punish noncompliance, depend upon the subpoenaed person’s conduct subsequent to his appearance, and must comply with the statutory provisions of notice and a hearing. (CPLR 2308; Judiciary Law, §§755, 756.) The civil warrant to appear is not unlike a bench warrant issued by a court in context of a criminal proceeding “to achieve the court appearance of a defendant * * * for some purpose other than his initial arraignment”, by directing a police officer to take the defendant into custody. (CPL 1.20, subd 30; 530.70.)
In the instant case, the defendant’s nonappearance before the Grand Jury on January 27 violated an express condition of his recognizance upon an indictment based upon identical conduct. It amounted, moreover, to a disregard of judicial process indicative of a predisposition to disobey the further mandate to return to court to answer the pending charge. It was a change of circumstances justifying a review of the preexisting bail conditions. (See, e.g., People v Gruttola, 72 Misc 2d 295.) Therefore, a bench warrant properly issued, pursuant to a proceeding to review the defendant’s bail. (CPL 520.60, subd 1.)
When the defendant voluntarily appeared before the court in response to the bench warrant, was again served with a Grand Jury subpoena commanding his presence forthwith, and indicated through counsel that he would not respond to the subpoena, he was subject to a custodial order “to bring the witness before the * * * body requiring his appearance” (CPLR 2308, subd [b]; see State of New York ex rel. Headley v Connor, 87 AD2d 511, 512; cf. Drake v City of Rochester, 96 Misc 2d 86, 98-99). The Civil Practice Law and Rules, and specifically section 2308 is applicable, in the preaccusatory stages of a criminal proceeding, to litigation involving Grand Jury subpoenas. (See Matter of Cunningham v Nadjari, 39 NY2d 314, 317; Matter of Hynes v Sigety, 60 AD2d 808, opp dsmd 43 NY2d 947; Matter of Hynes v Sloma, 59 AD2d 1014, 1015; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 1.10, p 10; cf. Matter of Davis [Baumeister], 88 Misc 2d 938, 939.)
Nor is there any merit to defendant’s arguments that the proceedings subjected him to multiple jeopardy based upon the same conduct or that the procedures were orchestrated by the People to elevate his contempt from a misdemeanor to a felony. As the foregoing indicates, the defendant’s appearance before the court, following his second failure to appear before the Grand Jury, was procured by the court’s bench warrant, even though voluntarily. His appearance cannot, therefore, be said to *6 have been orchestrated by the People. (Cf. Harris v United States, 382 US 162.) The defendant was never subject to a proceeding for contempt under the Judiciary Law, either civil or criminal. (Cf. Judiciary Law, § 751, subd 1; § 753, subd 5; CPLR 2308; Matter of Hynes v Hartman, 63 AD2d 1, 3-4.) Therefore, no issue arises as to the applicability of double jeopardy principles to these facts. (People v Leone, 44 NY2d, at p 319, n 2, Fuchsberg, J.; cf. People v Colombo, 31 NY2d 947.) The defendant “elevated” his contemptuous conduct to a felony, when having bodily appeared before the Grand Jury, albeit under compulsion, he refused to be sworn.
Finally, even if the procedures by which defendant’s appearance before the Grand Jury ultimately was obtained were defective, the defect “did not justify the refusal of [defendant] to be sworn and thereby to deprive the Grand Jury of the benefit of his testimony” regarding a subject over which the Grand Jury had jurisdiction. (People v Oliveri, 18 AD2d 1049; cf. United States v Bryan, 339 US 323.)
PRIVILEGE AGAINST SELF INCRIMINATION
The only remaining issue is whether, regardless of the procedural propriety of the custodial order, the defendant was denied his privilege against self incrimination (US Const, 5th Arndt) by being compelled to appear before the Grand Jury and thereby admit service of the subpoena or refuse to testify. The court finds this contention specious.
The Grand Jury’s subpoenas, as well as proceedings undertaken to enforce them, are undoubtedly a form of compulsion within the Fifth Amendment (see, e.g., Matter of Ruskin v Detken, 32 NY2d 293, 298, n 2). In context of the instant proceeding, the defendant’s appearance before the Grand Jury ultimately incriminatd him. However, “the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating.” (Fisher v United States, 425 US 391, 408.) The physical act of appearing in the presence of the Grand Jury is no more testimonial or communicative than the physical acts of standing in a lineup, being photographed, measured or asked to write, speak, gesture or wear particular garments. (Fisher v United States, supra, at p 408; People v Craft, 28 NY2d 274, 276; People v Goldberg, 19 NY2d 460, 465-466.)
To the extent that defendant, by his appearance, acknowledged that he was the person subpeonaed or, as he asserts, satisfied an element of the crime (Penal Law, § 215.51), such *7 acknowledgement or act of appearing did not, of itself, present “ ‘substantial and “real” * * * hazards of incrimination.’ ” (United States v Doe, 465 US _, 104 S Ct 1237, 1243, n 13; United States v Apfelbaum, 445 US 115,131; Marchetti v United States, 390 US 39, 53; People v Copicotto, 50 NY2d 222, 229.) His appearance was “essentially a neutral act” (California v Byers, 402 US 424, 432), which was not, of itself, incriminating. There was nothing unlawful in acknowledging receipt of the subpoena by complying with its terms. (Cf. Fisher v United States, 425 US, at pp 411-412.) Moreover, defendant’s physical presence before the Grand Jury was not a condition precedent to prosecution for contempt as a felony, in light of the court’s directive that he appear and testify before the Grand Jury. (People v Ruggiano, 92 Misc 2d 876, affd 70 AD2d 940.) Finally, the hazard of incrimination did not inhere in defendant’s appearance before the Grand Jury, but in his refusal to be sworn. Had he been sworn, defendant would have received full transactional immunity with regard to all topics of inquiry (CPL 190.40, subd 2). The court rejects the proposition that the Fifth Amendment requires the court to anticipate that a witness will undertake an unlawful course of conduct in response to its orders or process. The defendant’s refusal to be sworn was a voluntary act independent of any compulsory order to appear before the Grand Jury. (See Matter of Ruskin v Detken, supra, at p 299; People v Oliveri, 18 AD2d, at p 1049; cf. United States v Bryan, 339 US, at p 341.)
If defendant’s position were adopted, courts would be compelled to “put up with shifts and subterfuges in the place of truth and [would be] powerless to put an end to trifling” (Loubriel v United States, 9 F2d 807, 808, L. Hand, J.). Fortunately, “[testimonial compulsion is an intensely practical matter” (United States v Bryan, 339 US, at p 332) which provides the court with instruments equal to defendant’s machinations.
The motion is denied.