146 N.J. Super. 15 (1976)
368 A.2d 947
FRANK MALLAMACI, PETITIONER-APPELLANT,
v.
CHRISTOPHER DIETZ, CHAIRMAN, NEW JERSEY STATE PAROLE BOARD, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1976.
Decided December 21, 1976.
*16 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. James M. Blaney argued the cause for appellant (Messrs. Starkey, White & Kelly, attorneys).
Mr. Leonard A. Peduto, Jr., Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
This is an appeal from an adverse determination of the New Jersey State Parole Board which denied petitioner parole. Because of the involved factual situation, we deem it necessary to set forth those facts with some particularity.
Petitioner is serving an aggregate term of confinement of from 10 to 11 years.[1] He first appeared for parole consideration on March 4, 1975. The Parole Board deferred decision pending clarification of his offender status. On September 4, 1975 the Board issued a "Notice of Decision" in *17 which it (1) denied his application for parole, (2) classified him as a multiple offender by reason of a prior conviction and sentence in the State of New York for the crime of manslaughter, N.J.S.A. 30:4-123.12(a) (3), and (3) scheduled him for a new parole hearing when eligible as a second offender. The classification department at the State Prison, Leesburg, then calculated petitioner's parole eligibility date as a second offender to be December 22, 1975. This computation included allowances for 492 days in commutation credit, N.J.S.A. 30:4-140; 225 days in estimated work credits, N.J.S.A. 30:4-92, and 161 days in estimated minimum security credits, N.J.S.A. 30:4-92. Petitioner again appeared for parole consideration in November 1975. In a "Notice of Decision" dated November 3, 4 and 5, 1975, the Board granted conditional liberty to petitioner, effective December 23, 1975, on condition that he make regular weekly payments of $10 to the Burlington County Probation Department until such time as he fully extinguished his liability for the outstanding fines. On December 9, 1975 petitioner agreed to the terms and limitations annexed to the parole certificate, and he was subsequently released from confinement on December 23, 1975.
After leaving prison petitioner went home and lived with his mother in Paterson. His mother died during the spring of 1976 and, as a result, his plans to get married were put off. He subsequently married on June 19, 1976 at St. Michaels Monastery, Union City, and he received permission from the Board to take a brief honeymoon in Canada. Upon returning he and his wife took up residence in North Bergen and petitioner continued working for S & E Construction Co. in Paterson.
Petitioner made every weekly payment to the Burlington County Probation Department and otherwise performed in accord with his parole conditions.
On July 16, 1976 the chairman of the Parole Board informed the superintendent of the State Prison at Leesburg that petitioner had been prematurely and erroneously released *18 from confinement. Investigation by the Board's staff disclosed that (1) in the parole eligibility calculation appellant had been afforded work and minimum security credits in excess of his actual earnings of same, and (2) the calculation was also invalid due to mathematical error. On July 19, 1976 the superintendent issued an order for petitioner's arrest. The warrant was executed on July 22, 1976 and petitioner was summarily returned to Leesburg.
Petitioner filed a timely notice of appeal seeking review of "an action of the State Parole Board on July 22, 1976 revoking the parole * * * granted on December 23, 1975." Petitioner also applied for temporary emergent relief (R. 2:9-8) which was denied with the direction that the Board conduct a plenary hearing to determine petitioner's actual parole eligibility date.
After a hearing held on August 10, 1976 the hearing officer filed a report on August 13, 1976, concluding on the basis of testimonial and documentary evidence presented that, as of December 22, 1975, petitioner's actual parole eligibility date was September 10, 1976. On August 24, 1976 the State Parole Board adopted the hearing officer's findings of fact and conclusions of law, and a new parole hearing was scheduled for September 7, 1976. Before that hearing took place the Board requested the Attorney General to render an opinion as to whether petitioner should be given credit for the seven months he had spent on the street before being returned to Leesburg in July 1976. The opinion given pursuant to that request recommended that the seven months credit be given, as long as petitioner had nothing to do with miscalculations. (Op. A.G. M76-2833, dated August 23, 1976.)
Thereafter, an additional investigation was requested by the Board to ascertain whether petitioner had committed any type of illegal act or perpetrated any fraud on the Parole Board prior to his initial parole in December 1975. That investigation, which was conducted by a Deputy Attorney General, disclosed no wrongdoing.
*19 Following the September 7, 1976 hearing the Parole Board issued a "Notice of Decision" dated October 4, 1976, which denied parole and rescheduled petitioner for a rehearing in July 1977. It is from this decision that petitioner appeals.
Following the filing of this appeal petitioner applied for interim relief releasing him from custody pending determination. We declined such release and accelerated the appeal. R. 2:9-2.
Petitioner argues that both fundamental fairness and due process require him to be returned to his parole status, and since the purpose of parole is to aid both the parolee and society, it is incumbent upon those charged with the revocation or taking away of parole to be fair, just and accurate in their rulings. He cites Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in support of this argument. He points out that he was released after hearings by the Board on December 23, 1975; that he has not violated any condition of his parole; that he has been a model citizen and no allegation of wrongdoing has been alleged against him. He concludes that the decision of the Board must be regarded as arbitrary and capricious on its face in light of the same Board's decision rendered in November 1975.
The Board, through the Attorney General, argues that the proceedings wherein the State Parole Board originally acted to confer conditional liberty upon defendant were fatally defective; that petitioner can acquire no fixed indefeasible entitlement to conditional liberty where the source of that asserted right is a prior invalid grant of parole, and that the denial of community release on October 4, 1976 was a sound and proper implementation of the Board's discretionary authority.
The Attorney General reminds us that eligibility for parole consideration is strictly governed by the provisions of legislative enactment. Those statutes fix minimum periods of incarceration before a parole may be granted. See N.J.S.A. *20 30:4-123.10, 123.11 and 123.12. When a statute establishes a minimum period of incarceration before eligibility for parole is manifest, that term must be satisfied by actual service thereof, subject only to certain prescribed credits allowed in diminution of that term. R. 3:21-8; N.J.S.A. 30:4-92 and N.J.S.A. 30:4-140. It is the Board's position that premature release from confinement in derogation of such a statute, and as a direct result of clerical or administrative error, amounts to an ultra vires action.
Even if we assume that the prior grant of parole afforded to petitioner by the decision of November 3, 4 and 5, 1975 is and continues to be void, that assumption is hardly dispositive of this appeal since it is undisputed that petitioner has now satisfied the minimum period of incarceration fixed by statute and is thus, at least on that basis, eligible for parole. In short, the Board clearly has jurisdiction to grant parole as of now. In addition, even if we regard the prior grant of parole by the Board as void, that in itself does not prevent us from considering the Board's report of November 3, 4 and 5, 1975 leading to that prior grant of parole.
At the outset we observe that the Parole Board has been granted broad discretionary powers. See N.J.S.A. 30:4-123 et seq. However, any action of the Board is always judicially reviewable for arbitrariness. Monks v. N.J. State Parole Board, 58 N.J. 238, 242 (1971). The standard for release of a prisoner to parole is established by the legislature in N.J.S.A. 30:4-123.14:
No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned while under sentence, but only if the board is of the opinion that there is reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society.
This is the standard that the Board found petitioner to have met when it released him on parole on December 23, 1975. The fact that the determination was made under a *21 mistake of time served does not derogate from that fact. In addition, there is nothing in the record to indicate that the conduct of petitioner while on parole, and after his return to Leesburg in July 1975, which would require the Board to come to a different conclusion than that which it reached in November 1975. To the contrary, the record is replete with evidence of petitioner's rehabilitation and his assumption to his proper and rightful place in society without violation of the law. Obviously, the welfare of society was not affected, and petitioner's conduct, at least between December 23, 1975 and the date of his arrest in July 1976, vindicated the confidence which the Board had placed in him.
The now obviously transparent attempt of the Board to second guess itself is in nowise supported by the record. We refer to the Board's conclusions, which read as follows:
In addition, the Board has carefully reviewed a copy of the sentencing transcript which had not been previously available to the Board. At the time of sentencing, on April 23, 1971 (Mt. Holly, NJ) before the Honorable J. Gilbert VanSciver Jr., J.C.C., the court stated "I have been interviewed by officials of an investigatory agency who offered for consideration matters going to your credit and your cooperation with them." It is clear that, as a result of information now before the Board, your purported cooperation was given careful and public consideration by the sentencing court. The Board was never aware of this fact during previous parole considerations. This information has, in the Board's opinion, neutralized the impact of this purported cooperation, and this issue no longer stands in the same mitigation of the serious charges for which you were sentenced.
The Board is seriously concerned by the nature and circumstances of your offenses. You were convicted of Conspiracy and Bribery of the Mayor of West New York, N.J., in order to conceal gambling operations in that jurisdiction. In addition, you were convicted of Conspiracy and Bribery of a Captain of the Hudson County detectives force in order to conceal gambling operations. It is the opinion of this Board that the circumstances of your offenses are of a nature which society views as an element leading to the deterioration of the foundation of government, in which society has a paramount interest. Offenses of this nature are characteristically committed by citizens who appear to be respectable, law abiding, members of the community. To corrupt the officials of government is to corrupt the foundation of government. Activities such as those you were convicted of leads to a loss of public confidence in the functioning *22 and legitimacy of society's governmental institutions. The Board finds parole at this time would seriously depreciate the serious nature of the crimes for which you were sentenced.
The nature and patterns of your offenses are a serious concern to the public and are against the best interest of society. Due to the nature of your offenses against society, it is the Board's opinion that this sentence has specific deterrent aspects and the deterrent aspects of your sentence have not yet been fulfilled. It is therefore the decision of the State Parole Board that your release on parole at this time would be incompatible with the interests of society. Parole is therefore denied and you will be scheduled for a rehearing in July, 1977.
First, with respect to the cryptic references to cooperation with an investigatory agency on the part of petitioner, we questioned counsel at oral argument with respect to them and we are satisfied from that interrogation that the references to agencies have been confused by the Board. The intervention, such as it was, on behalf of petitioner at the time of his original sentencing did not involve the same agency which subsequently communicated the fact of cooperation to the Parole Board. We find there is absolutely no basis in any record for the first paragraph which has been quoted above.
Second, with respect to the concern of the Board as to the nature and circumstances of the offenses for which petitioner was serving time, those are the same offenses which the Board considered when it originally determined that it would grant parole in November 1975. The offenses were just as serious and the circumstances and nature of the offenses were exactly the same as they stood in September 1976. The Board fully knew of these facts and yet was of the unanimous opinion (N.J.S.A. 30:4-123.19) that petitioner met the provisions of N.J.S.A. 30:4-123.14 quoted above. We are, therefore, constrained to conclude that the action of the Board set forth in its "Notice of Decision" dated October 4, 1976, denying parole to petitioner, is arbitrary. Accordingly, we remand the proceedings to the Parole Board with the direction that it release petitioner on parole forthwith, subject to the same conditions which were contained in the *23 original certificate of parole numbered 26508 and dated November 3, 4 and 5, 1975.
Reversed and remanded.
NOTES
[1] For background on the offenses involved see State v. Zicarelli, 122 N.J. Super. 225 (App. Div. 1973), certif. den. 62 N.J. 429 (1973), and State v. Louf, 126 N.J. Super. 321 (App. Div. 1973), mod. 64 N.J. 172 (1973).