Justice ALBIN,
dissenting.
Fifteen years ago, this Court stated that “[n]o matter how great the pressure, agencies of government cannot ignore the law in special cases.” Trantino v. N.J. State Parole Bd., 166 N.J. 113, 197, 764 A.2d 940 (2001). The Court made that statement because the New Jersey Parole Board, in a controversial case, repeatedly refused to parole an inmate despite the governing statute that called for his release. See id. at 121, 189, 764 A.2d 940. The inmate, Thomas Trantino, had brazenly and brutally killed two police officers thirty-seven years earlier. See id. at 121-22, 764 A.2d 940. The Court knew that the public would “find it incomprehensible that the law requires parole release of an inmate who was responsible for the murder of two police officers.” Id. at 196, *233 764 A.2d 940. It nevertheless ordered Trantino’s release because, after almost four decades in prison, there was no longer a substantial likelihood that he would commit another offense. Id. at 190, 764 A.2d 940. The Court emphasized that the “case [was] more about the rule of law than it [was] about Thomas Trantino,” and that the law must apply “equally to all persons, the bad as well as the good.” Id. at 197-98, 764 A.2d 940 (quoting Catena v. Seidl, 68 N.J. 224, 228, 343 A.2d 744 (1975)). The Court concluded with these words: “If ever courts permit agencies of government to create exceptions to the rule of law, applying it for the many but exempting the disfavored, we will have irreparably damaged the foundation of our democracy.” Id. at 198, 764 A.2d 940.
The present case tests whether our Court is willing to keep faith with the guiding principles set forth in Trantino.
Sundiata Acoli, now seventy-nine years old, committed infamous crimes forty-two years ago — the murder of one New Jersey State Trooper and the atrocious assault and battery of another. He was sentenced to a term of life plus twenty-four to thirty-years imprisonment. Based on the law in effect when he committed those abhorrent crimes, he has been eligible for parole. The Parole Board denied Acoli parole in 1993, 2004, and 2011. On the last occasion, as on earlier ones, the Parole Board maintained that there was a substantial likelihood that Acoli would commit another crime if released.
The Appellate Division reversed, finding no support in the record for the conclusion that Acoli posed a threat if paroled. The Appellate Division determined that the Board’s denial of parole was therefore arbitrary and capricious and ordered the Board to release Acoli after setting appropriate conditions.
In ordering Acoli’s release, the appellate panel simply followed the plain words of the governing parole statute and gave this notorious inmate the protection of the law. The courageous appellate panel clearly recognized that its decision would not be popular and might be misunderstood, but was willing to suffer the public’s opprobrium because the law commanded the result.
*234 The Board does not challenge the Appellate Division’s finding that the denial of parole lacked evidential support. Instead, the Board argues without any statutory support that the Appellate Division must (1) remand to the Board to hear directly from Acoli, although the Board evidently had no desire to hear from him when it last convened, and (2) allow the victim’s family members to be heard, although they were given the opportunity to register their opinions through written or videotaped statements.
In accepting the Board’s argument and overturning the Appellate Division, the majority ignores a plainly written statute and our jurisprudence governing appeals from a final decision of a state agency. See N.J.S.A. 30:4-123.55; In re Appeal of Certain Sections of Unif. Admin. Procedure Rules, 90 N.J. 85, 96, 447 A.2d 151 (1982) (“The final decision constitutes the ultimate regulatory result.”). The majority’s strained and unreasonable interpretation of our law will keep Acoli in prison for more hearings and more appeals — -without in any way altering the Appellate Division’s unchallenged legal conclusion that Acoli poses no danger to the public. The now forty-two-year record in this case will not meaningfully change on remand; nor is it reasonable to expect that the Board’s decision will change. But the majority decrees that these pointless steps be taken.
Acoli committed the most heinous crime: the murder of a law enforcement officer — a crime, which, if committed today, would result in a life sentence without parole eligibility. N.J.S.A 2C:11-3(b)(2). But even the most despised inmate is entitled to the protection and enforcement of the law. That was the lesson in Trantino. That is a lesson, sadly, forgotten today. Because Acoli has not been given the benefit of the statute as written, I respectfully dissent.
I.
The Parole Act, N.J.S.A. 30:4-123.45 to -123.69, provides two pathways in the parole process for inmates sentenced to prison for murder. Both paths begin the same way. A pre-parole report, *235 which includes any statements submitted by the victim’s relatives, is forwarded to a panel of the Parole Board. N.J.S.A. 30:4-123.54(a), (b)(2); N.J.AC. 10A:71-3.7(c)-(d). A hearing officer then reviews the pre-parole report and any related material and refers the case to a Board panel. N.J.A.C. 10A:71-3.15(a)(l), (b). The Board panel must notify the victim’s relatives of their right to testily or submit written or videotaped statements at the hearing. N.J.SA 30:4-123.54(b)(2). Next, a Board panel reviews the preparóle report and conducts a hearing. N.J.S.A. 30:4-123.55(c); N.J.A.C. 10A:71-3.16(a). At the hearing, the Board panel “receive[s] as evidence any relevant and reliable documents or videotaped or in person testimony, including that of the victim of the crime or the members of the family of a murder victim if the victim or a family member so desires.” Ibid.
Pathway one is when the Board panel denies parole. In that circumstance, the inmate may appeal to the full Parole Board for a review of the panel decision. N.J.S.A 30:4-123.58(a); N.J.A.C. 10A:71-4.1(a). The inmate and victim’s relatives have no statutory right to appear in person before the full Parole Board, although they are provided the opportunity to be heard before the Board panel. See N.J.S.A. 30:4-123.55(c). The full Board, however, has the inherent authority to permit the inmate and the victim’s relatives to make statements or give testimony before rendering a decision. If the full Parole Board denies parole in a final agency determination, the inmate has the right of appeal. See Trantino, supra, 166 N.J. at 173, 764 A.2d 940.
The Appellate Division is authorized to correct arbitrary decisions of the Parole Board and, when necessary, to order the release of a prisoner held in violation of the law. Ibid. That power is the essence of judicial review. It ensures that the rule of law is not sacrificed to the caprice of government actors rendering decisions that cannot be justified by the record or governing statutes. Ibid. Under the law applicable to Acoli, parole could be denied only if a preponderance of the evidence established a “substantial likelihood” the individual would commit a crime if released. See N.J.S.A. 30:4-123.53(a) (1979), amended by *236 N.J.S.A. 30:4-123.53(a) (1997) and N.J.S.A. 30:4-123.56(c) (1979), amended by N.J.S.A. 30:4-123.56(c) (1997).
Pathway two is when a Board panel recommends that an inmate incarcerated for murder be released on parole. In that circumstance, the case is referred automatically to the full Parole Board. N.J.S.A. 30:4 — 123.55(f); N.J.AC. 10A:71-3.18(c). When the Board panel recommends release, N.J.S.A. 30:4^123.55® directs that “parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation.” That statute also provides that the victim’s family shall be notified of the hearing and “be afforded the opportunity to testify in person or to submit written or videotaped statements.” Ibid.
Subparagraph ffi was enacted as an amendment to N.J.S.A. 30:4-123.55 to prevent a two-member Board panel from paroling an inmate incarcerated for murder without review by the full Parole Board. See Senate Judiciary Committee, Statement to Assembly No. 2772 (Feb. 23, 1989). In enacting subparagraph ffi (pathway two), the Legislature was aware that a final determination by the Parole Board under pathway one was subject to judicial review and could be reversed if arbitrary and capricious, and that the court was empowered to order parole. See, e.g., N.J. State Parole Bd. v. Cestari, 224 N.J.Super. 534, 551, 540 A.2d 1334 (App.Div.), certif. denied, 111 N.J. 649, 546 A.2d 558 (1988) (ordering parole in 1988); Mallamaci v. Dietz, 146 N.J.Super. 15, 22-23, 368 A.2d 947 (App.Div.1976) (ordering parole in 1976). In other words, subparagraph ffi has no bearing on pathway one. Nothing in the language of subparagraph © or the legislative history suggests that the Legislature intended to address anything other than the circumstance of a board panel’s decision to recommend release of a convicted murderer.
II.
A.
The law pertaining to pathway one governs the outcome of this case.
*237 In 2010, for the third time, Acoli was eligible for parole. A “pre-parole report” was prepared, see N.J.S.A. 30:4 — 123.54(a); N.J.A.C. 10A:71 — 3.7(c)—(f); the victim’s family members were advised of their right “to provide a written or videotaped statement” or testify before the Parole Board panel, see N.J.S.A. 30:4-123.54(b)(2); and the Board panel met with Acoli and reviewed his file along with the victim-impact statements, see N.J.S.A. 30:4-123.55(c). The two-member Board Panel denied parole. With the addition of a third member, the Board Panel imposed a future parole eligibility term of ten years, making Acoli eligible for parole at the age of eighty-three.
Acoli appealed to the full Parole Board in accordance with N.J.S.A. 30:4-123.58(a) and N.J.A.C. 10A:71-4.1(a). Although Acoli had no right to appear before the Parole Board to present his case, the Board had the authority to conduct a personal interview of him. Acoli did not receive an invitation to appear before the Board. The full Parole Board reviewed Acoli’s complete file covering the entirety of Acoli’s incarceration. Acoli’s hearing on the written record, before the full Board, conformed with the applicable statutes and regulations.
In a “Notice of Final Agency Decision,” dated February 23, 2011, the full Parole Board denied Acoli parole, finding a substantial likelihood that Acoli, if released, would commit another offense. The Board based its decision on (1) Acoli’s conviction of the murder of Trooper Foerster in 1973 and earlier minor charges, for which he received probationary sentences; (2) his purported lack of insight into his criminal behavior committed thirty-seven years earlier; (3) his account of events about the Trooper Foerster murder, which the Board found “not credible”; and (4) his refusal or inability to accept the State’s version of what occurred. The Board found that Acoli’s “answers made it difficult to understand how and why his thinking has transitioned from violent to non-violent thinking” in the years since his incarceration in 1973. Acoli had been a member of the Black Panther party in the 1960’s and 1970’s but, while in prison, renounced the use of *238 violence as a means of bringing about societal change. Last, the Board attributed to Acoli “impulsive and questionable judgment” because he personally called the psychologist to ask her when his psychological evaluation would be conducted for his pre-parole report.
B.
The Appellate Division concluded that a “thorough scrutiny of the record” did not “support the Board’s stated reasons for denial of parole, namely that if released Acoli would be likely to commit another crime.” This conclusion is not disputed. The appellate panel made the following observations: (1) Acoli has not committed a single disciplinary infraction since 1996, and accumulated only minor infractions since 1979; (2) his institutional progress report indicated that he “ ‘has displayed a positive rapport with both staff and inmates’ ”; (3) Acoli “completed at least 100 different programs for self-improvement as well as vocational training”; (4) Acoli was a prisoner representative for the correctional facility’s social resource organization, and as a result of “his positive institutional record, he became a member of the Honors Unit program”; and (5) in 2008, prison staff reported that Acoli had “demonstrated adequate coping skills ... and ability to establish positive interaction with others,” and that he was expected “to be able to transition to the community if paroled.”
The appellate panel also referenced the pre-parole mental health evaluation conducted by Lois D. Goorwitz, Ph.D. Dr. Goorwitz noted that Acoli “ ‘expressed regret and remorse about his involvement in the death of the state trooper’ ” and “ ‘appeared to be answering honestly.’” Dr. Goorwitz also found Acoli “‘to be very cooperative, self[-]reflective, thoughtful, and non[-]defensive in his responses to the questions posed to him.’ ” (alteration in original). She concluded that “‘there were “NO psychological contraindications to granting parole.” ’ ” The panel expressed that it was “appalled by Acoli’s senseless crimes” but that the Parole Board’s decision was wholly contradicted by the record and that *239 “Acoli has paid the penalty under the laws of this State for his crimes.” Because the Appellate Division determined that “[t]he record simply does not support further denial of parole,” it directed the Parole Board to take the appropriate steps leading to Acoli’s release.
C.
The Appellate Division also denied the Parole Board’s motion for reconsideration. The appellate panel rejected the Board’s argument that its final parole decision was not, in fact, final because Acoli was not granted “a full evidentiary hearing” under N.J.S.A. 30:4 — 123.55(f). The appellate panel noted that the plain and unambiguous language of N.J.S.A. 30:4 — 123.55(f) requires a full evidentiary hearing by the Parole Board only when a Board panel recommends that a murder inmate be paroled. The Appellate Division pointed out that N.J.S.A. 30:4-123.55(f) does not apply to inmates, such as Acoli, who are denied parole by a Board panel. The statutes applicable to cases in which the Board panel denies parole, N.J.S.A. 30:4-123.55(c) and -123.58, do not mandate that the full Parole Board conduct an evidentiary hearing. The appellate panel indicated that, “in a nine-page ‘Notice of Final Agency Decision,’ the Board methodically reviewed the evidence and determined that ... there was a substantial likelihood that [Acoli] would commit a crime if released,” and unanimously elected to deny Acoli parole. The appellate panel stated that the Parole Board’s assertion that the Appellate Division’s reversal of the full Board’s final decision was the equivalent of a Parole Board panel recommending parole, thus triggering a remand for an evidentiary hearing, was “patently incorrect.”
III.
The Appellate Division’s straightforward application of the law cannot be faulted. A majority of this Court has rewritten the plain, unambiguous language of the statute to reach an outcome that it believes the Legislature would find reasonable. That is a *240 new canon of statutory interpretation. Nothing in the statutory text supports the majority’s decision. Moreover, as suggested by the Appellate Division, the majority’s result upends the meaning of a final administrative determination.
Presumably, when the full Parole Board denies parole to a murder inmate, the Board has completed a comprehensive review of the record, including the inmate’s interview, the victim-impact statements, the inmate’s history of institutional adjustment and progress, psychological reports, and all other relevant material. See N.J.S.A. 30:4-123.58(a); N.J.AC. 10A:71-4.1(a). This is not and should not be a pro forma undertaking.
Under the majority’s new formulation, after the full Parole Board denies parole to a murder convict in a final agency determination, following an earlier denial by a Board panel, the Appellate Division can render only an advisory decision — even when the record utterly fails to show a substantial likelihood that the inmate will commit another offense if released on parole. That approach ignores our existing jurisprudence. The majority requires that the Appellate Division must remand to the full Board for an evidentiary hearing. If the Parole Board conducted a thorough review the first time, however, we cannot expect the Parole Board will change the view it expressed in a nine-page, single-spaced decision. Instead, we have the makings of a show hearing. Acoli will be given the opportunity to appear before the full Parole Board to repeat what he has said earlier and to be called lacking in credibility based on his in-person presentation. The victim’s family also has the opportunity to repeat what the Parole Board has read or reviewed through videotaped statements. Then, a parole denial will follow, a new round of appeals, and the Appellate Division can revisit the matter when Acoli is an octogenarian.
The tortured interpretation of the statutory scheme creates a merry-go-round that will extend the incarceration of Acoli — but for no rational or just purpose. In Trcmtino, this Court committed the judiciary to the task of ensuring that administrative agencies not thwart the law in unpopular cases. Tmntino, supra, *241 166 N.J. at 197, 764 A.2d 940. In that case, we held that the law cannot bend to the strong winds of public opinion. Perhaps few will shed a tear that Acoli will spend more years in prison— without any legal justification — for the murder of a police officer. But this ease is about more than one individual. It is about the integrity of our justice system. The rule of law must apply even to the most disfavored member of society.
The precepts articulated in Trantino are as relevant today as they were fifteen years ago. By reversing the Appellate Division, the majority has forsaken those precepts. I therefore respectfully dissent.
For reversal and remandment — Justices LaVECCHIA, PATTERSON, SOLOMON and Judge CUFF (temporarily assigned) — 4.
For dissent — Justice ALBIN — 1.
Not Participating — Chief Justice RABNER and Justice FERNANDEZ-VINA — 2.